Sharon KNOTT, Defendant–
Below, Appellant,

v.

LVNV FUNDING, LLC, Plaintiff–
Below, Appellee.

No. 453, 2013.

Supreme Court of Delaware.

Submitted: May 7, 2014.
Decided: June 24, 2014.

Albert M. Greto, Esquire, Law Offices of Albert M. Greto, Wilmington, Delaware, Attorney for Appellant.

Patrick Scanlon, Esquire, Law Offices of Patrick Scanlon, P.A., Milford, Delaware, Attorney for Appellee.

Before STRINE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices.

STRINE, Chief Justice:

## I. *Introduction*

In 2003, a default judgment was entered in the Court of Common Pleas against the appellant, Sharon Knott, in favor of the appellee, LVNV Funding, LLC (the "Creditor"). The Creditor did not attempt to execute on the judgment for more than nine years, until the Creditor moved to refresh the judgment in 2012. Throughout the proceedings, Knott argued that 10 *Del. C.* § 5072, which governs the execution of judgments in civil actions, acts as a statute of limitations that requires the holder of a judgment to seek to execute on the judgment within the first five years after the

judgment is entered. The Superior Court rejected that argument, relying on a thoughtful decision of a Commissioner finding that the five year limit in § 5072 did not operate as a statute of limitations, but was merely a time period after which a judgment creditor had to affirmatively ask the Superior Court to refresh the judgment in its discretion, rather than the judgment creditor being entitled to execute on the judgment as of right.

At oral argument on appeal, the parties acknowledged for the first time that perhaps the relevant statute was actually 10 *Del. C.* § 5073, which governs the execution of judgments that were first entered in the Court of Common Pleas. But Knott argued that the result was the same under either statute, because both statutes impose a five year period of limitations on the collection of judgments. Knott's only argument below opposing the refreshment of the judgment was on that ground. We do not find favor with Knott's argument, because as we have previously held, there is no statute of limitations on the collection of a judgment and neither § 5072 nor § 5073 operate as a statute of limitations on the execution of judgments. Thus, the Superior Court's grant of the motion to refresh the judgment is affirmed.

1. *LNVN Funding, LLC v. Knott,* 2012 WL 6853516, at *1 (Del.Super. Dec. 24, 2012). The default judgment arose out of a suit filed by Sears, Roebuck and Company against Knott after she defaulted on her Sears' credit card. Although Knott was personally served with the Complaint, Knott did not file an Answer, and a default judgment was entered against her for $3,360.30. The Judgment was then assigned to the Creditor, who brought this action. Answering Br. at 1.

2. *LNVN Funding, LLC v. Knott,* 2012 WL 6853516, at *1 (Del.Super. Dec. 24, 2012).

3. Appendix to Opening Br. at A000008.

## II. *Background*

On October 12, 2012, the Creditor moved to refresh a judgment against Knott (the "Motion to Refresh"). The judgment against Knott was first obtained on February 4, 2003 as a default judgment in the Court of Common Pleas. Then, it was transferred to the Superior Court on April 6, 2004 (the "Judgment").[1] The Creditor's Motion to Refresh was argued to a Commissioner of the Superior Court.[2]

Knott argued that 10 *Del. C.* § 5072 is a statute of limitations that requires the holder of a judgment to "do something" within five years to be able to execute on that judgment.[3] Knott claimed that because the Creditor had not sought to execute on the Judgment for more than nine years, the Creditor was now forever barred from executing on the Judgment. The Creditor argued that § 5072 was not a statute of limitations, and that it only served to extend the time period within which a judgment creditor could execute on a judgment without filing a Rule to Show Cause. Section 5072 extended that period from the common law rule of one year and one day, to the five year time period provided for in § 5072. Neither party argued to the Commissioner that the statute was clear and unambiguous.[4]

4. In fact, Knott's counsel's first statement to the Superior Court was "I'm glad my learned colleague had difficulties with that statute, because when I was reading it and rereading it and rereading it some more, unlike sometimes when I read scripture, I just couldn't see the light. But that said, my reading of the statute suggests to me that you have to do something, something within five years." Appendix to Opening Br. at A000008. After explaining his interpretation of the statute as a statute of limitations, Knott's counsel said, "I don't have a better way of stating it, especially with my difficulties trying to figure out what the statute was saying." Appendix to Opening Br. at A000009. The Creditor also

The Commissioner's Recommendation concluded that the statute was ambiguous and open to reasonable, differing interpretations. The Commissioner then looked to Victor B. Woolley's 1906 treatise on Practice in Civil Actions and Proceedings in the Law Courts in the State of Delaware to interpret § 5072. The Commissioner recommended granting the Creditor's Motion to Refresh. The Superior Court accepted the Commissioner's recommendation and granted the Creditor's Motion.

### III. *Analysis*

 A trial court's interpretation of a statute is reviewed *de novo*.[5] "Statutory construction requires us to ascertain and give effect to the intent of the legislature."[6] The only issue presented to the Superior Court was whether § 5072, which was adopted in 1857, prohibits a judgment creditor from executing a judgment if the creditor did not execute on that judgment within the first five years after the judgment was entered. Knott argues that because the judgment against her was entered in 2003 and was not refreshed until 2012—over 9 years later—the Superior Court erred by executing the judgment in violation of what she contends is the five year statute of limitations created by § 5072. Section 5072(a) provides that:

> An execution may be issued upon a judgment in a civil action at any time within 5 years from the time when such judgment was entered or rendered, or from the time when such judgment became due; or to collect any instalment of a judgment within 5 years from the time when such instalment fell due.

This section shall only apply to cases when no execution has been previously issued to collect such judgment or instalment, and to cases where ·1 or more have been issued for such purpose, and it appears by the return of the officer that such judgment or instalment, as the case may be, has not been paid or satisfied. As to all other cases the law shall remain unaffected.

Knott now argues on appeal—for the first time—that the above statutory language is clear and unambiguous, and specifically requires execution on a judgment within five (5) years from the date of entry of the judgment.[7] Although that may be one possible reading of the statute, the statute does not clearly and unambiguously require a judgment creditor to execute on a judgment within five years or lose the right to execute. Section 5072 is written with permissive language, it states that an execution *may* be issued at any time within five years. The statute does not say that an execution on a judgment *must* be issued within five years, as Knott suggests. And, as the Creditor argues, another possible reading of the statute is that the statute confers on the judgment creditor the right to execute on the judgment at any time within five years but does not prohibit a judgment creditor from returning to court to formally move to refresh a judgment after the five years have expired—a motion that may be granted in the discretion of the Superior Court. Knott appears to acknowledge that a judgment creditor may move to refresh a judgment so that § 5072 will not act as a windfall for a judgment debtor who suc-

---

did not argue that § 5072 was clear and unambiguous.

**5.** *Delaware Bay Surgical Servs., P.C. v. Swier,* 900 A.2d 646, 652 (Del.2006) ("Questions of statutory interpretation are questions of law reviewed *de novo*.").

**6.** *Id.* at 652 (internal quotation omitted).

**7.** Opening Br. at 12.

cessfully evaded execution for five years.[8] But Knott's argument would undercut the ability of a judgment creditor to execute on the refreshed judgment, because she argues that the five year period in § 5072 operates as a strict statute of limitations.

Knott also devotes a substantial amount of her brief to arguing that the trial court erroneously applied 10 *Del. C.* § 4711, which governs liens on real estate, to its analysis in order to find an ambiguity.[9] This argument is confusing, because neither the Commissioner's Report nor the Superior Court's order granting the Creditor's Motion to Refresh reference § 4711 at all. In fact, the only reference to § 4711 by either the Superior Court or the Commissioner occurred in response to an argument Knott herself raised in connection with the Superior Court's denial of Knotts' motion for reargument.[10]

Rather than finding that § 5072 and § 4711 are ambiguous when read together, as Knott suggests, the Superior Court and the Commissioner both concluded, without looking to § 4711, that the language of § 5072, standing alone, was ambiguous. We agree with that conclusion. Indeed—and contrary to her current position that § 5072 is unambiguous—Knott's own counsel conceded before the Commissioner that the language of § 5072 was ambiguous by making repeated references to his "difficulties" in trying to figure out the statute's facial meaning.[11]

Because the statutory language is not clear and unambiguous, the Superior Court did not err by considering other evidence of the General Assembly's purpose in order to "ascertain and give effect to the [reading most consistent with the] intent of the legislature."[12] That other evidence included legislative history.

Before the enactment of § 5072 in 1857,[13] the common law required an execu-

8. Opening Br. at 12 ("A judgment creditor may still move to refresh a judgment. Therefore, the application of § 5072 does not act as a windfall or a reward for a judgment debtor who has been successfully evading execution.").

9. Opening Br. at 13 ("The Trial Court erred in applying 10 *Del. C.* § 4711 to its analysis in the instant matter because 10 *Del. C.* § 4711 only concerns a judgment as a lien on real estate."); *id.* at 14 ("The Trial Court has expanded the scope of 10 *Del. C.* § 4711 beyond a judgment as a lien on real estate, contrary not only to the plain and clear language of that statute, but the plain and clear language of § 5072 as well. There is absolutely nothing in 10 *Del. C.* § 4711 that extends § 4711 beyond a judgment as a lien on real estate, nor is there anything in 10 *Del. C.* § 5072 that is incongruent with § 4711 because of the judgment creditor's ability to renew or refresh a judgment."); *id.* at 15 ("Even if § 4711 and § 5072 are ... ambiguous because they are unclear when read together, the principles of statutory construction warrant an interpretation described above. Ms. Knott most respectfully suggests that the Trial Court erroneously concluded that [ ] reading § 5072 in conjunction with § 4711 required the Trail Court to ignore § 5072 and permit [the Creditor] to extend its ability to execute on the judgment....").

10. Opening Br. Ex. C ¶ 5 ("[Knott] points out that a judgment acts as a lien on real property for a period of 10 years unless the creditor files suit on the judgment or the debtor signs an acknowledgement allowing it to remain as a lien. But this case has nothing to do with real property. It is a personal judgment against the defendant over a credit card debt.... This argument is essentially a hash of different provisions having quite different purposes in mind, none of which are a help to [Knott]. The Court found the argument to be non meritorious when first presented and continues to find it non meritorious when presented a second time.").

11. *See supra* note 4.

12. *Delaware Bay Surgical Servs., P.C. v. Swier,* 900 A.2d 646, 652 (Del.2006).

13. VICTOR B. WOOLLEY, PRACTICE IN CIVIL ACTIONS AND PROCEEDINGS IN THE LAW COURTS IN THE STATE

tion "to be sued out within a year and a day after judgment"[14]:

> [I]n the early practice of the Superior Court ... it was the rule that after judgment, if no execution was issued within a year and a day, it was necessary to revive the judgment by [*scire facias*] before execution could regularly issue.... This practice was based upon the theory that where a plaintiff lay so long after his judgment was recovered, it was presumed that his judgment was satisfied or that the plaintiff had released the execution, and therefore the defendant was not to be disturbed without being called upon and having an opportunity to show that the judgment was paid, released, or discharged, or to present any other reason why execution should not issue against him.[15]

As Woolley explains, this system was predicated on the notion that the purpose of judgments and executions was to recover a debt due from a defendant. But as the use of judgments and executions began to increase as a convenient way of recovering a debt due from defendants in commercial transactions, the requirement of issuing an execution within a year and a day and recovering on it was awkward. Thus, "there grew up a practice of issuing an execution within the year and day for the sole purpose of complying with the rule, and in order to be in a position to issue execution, if found necessary, at some time thereafter."[16] That execution was then stayed, which gave the plaintiff the ability to execute on the judgment at any time during the life of the judgment without using a writ of *scire facias*.[17] Because this process was cumbersome, the courts in New Castle County and Sussex County resorted to the practice of the *vices comes*.[18] "The *vices comes* is a writ, which in fiction is issued upon all judgments of certain classes within a year and a day after their entry or after they become due and payable ... [I]t is viewed as an execution having been actually issued, and *alias* and other executions of appropriate characters can be issued without [*scire facias*], at any time during the life of the judgment."[19]

Woolley explains that "[t]he right to issue execution upon a judgment at any time after a year and a day and within the life of the judgment, without [*scire facias*], if a [*vices comes*] had been entered thereon, maintained in Delaware until [the enactment of § 5072]."[20] According to Woolley, § 5072 was intended to broaden the use of judgments and executions for commercial purposes.[21] As Woolley explains, the statute extended the time period when execution could be issued without resorting to *scire facias*, from one year and one day to five years.[22] After quoting the language of § 5072, Woolley states: "This, when exam-

---

OF DELAWARE § 956 (1906) [hereinafter WOOLLEY].

14. WOOLLEY § 955(c).

15. WOOLLEY § 955(c). A writ of *scire facias* is "[a] writ requiring the person against whom it is issued to appear and show cause why some matter of record should not be annulled or vacated, or why a dormant judgment against that person should not be revived." BLACK'S LAW DICTIONARY (9th ed.2009).

16. WOOLLEY § 955(c).

17. WOOLLEY § 955(c).

18. The practice of *vices comes* was never recognized or used in Kent County. WOOLLEY § 957.

19. WOOLLEY § 955(c).

20. WOOLLEY § 956.

21. WOOLLEY § 956.

22. WOOLLEY § 956.

ined, means that if no real or [*vice comes*] execution has been issued upon a judgment within a year, execution may issue thereon at any time within five years, without first resorting to [*scire facias* ]."[23]

In other words, § 5072 only changed the common law rule that required a writ of *scire facias* before execution was allowed on a judgment if more than one year and one day had elapsed since the judgment was entered. Under § 5072, a writ of *scire facias* was required only if five years had elapsed. Because the modern equivalent of a writ of *scire facias* is a rule to show cause,[24] and Superior Court Civil Rule 64.1[25] has replaced the rule to show cause with motion practice, the Creditor's Motion to Refresh was the proper procedural method to allow the creditor to execute on its judgment after five years had elapsed. This is the way that § 5072 has long been interpreted by the Superior Court.[26]

In short, § 5072 has long been understood as limiting the time period in which a creditor can execute a judgment without filing a motion to refresh the judgment to five years, rather than as a statute of limitations that prohibits the execution of judgments after five years. That understanding is underscored by decisions of this Court holding that there is no statute of limitations on judgments in Delaware.[27] For example, Knott's interpretation of § 5072 would be in tension with this Court's relatively recent ruling in *Gamles Corp. v. Gibson.* In *Gamles,* the Superior Court held that because Gamles had not renewed its judgment within ten years of entry, the judgment had expired under § 4711.[28] Gamles acknowledged that its lien had expired under § 4711, but argued that the underlying judgment had not expired. This Court agreed, and allowed Gamles to pursue an action to collect on a judgment by way of attachment after more than ten years had passed without a motion to renew the judgment.[29] *Gamles* is not directly controlling because *Gamles* dealt with a judgment based on a mortgage, which is subject to different statutory provisions.[30] But *Gamles* is relevant because the decision relied on *Guayaquil & Quito Railway Co. v. Suydam Holding Corp.,* a decision of this Court dating to

23. WOOLLEY § 957.

24. *See supra* note 15; *see also Ex Parte Wood,* 22 U.S. 603, 9 Wheat. 603, 6 L.Ed. 171 (1824) ("The party is supposed to be called upon to show cause, which is precisely what a *scire facias* requires in its official mandate"); *First Nat. Bank v. Crook,* 174 A. 369, 371 (Del.Super. Dec. 1, 1933) ("[A] scire facias ... is a continuation of a proceeding already begun, and is, therefore, in the nature of a rule to show cause why an execution should not issue.").

25. Superior Court Civil Rule 64.1 provides that: "Except where a rule to show cause is required by statute, any matter of the type heretofore brought before the Court by rule to show cause shall be initiated by motion...."

26. *LNVN Funding, LLC v. Knott,* 2012 WL 6853516, at *1 (Del.Super. Dec. 24, 2012) ("[The Creditor's] motion is not unusual and

has been generally accepted and granted by the Superior Court for decades."); Answering Br. at 9 (suggesting that courts have been interpreting the statute in the way that the creditor suggests since its enactment).

27. *Gamles Corp. v. Gibson,* 939 A.2d 1269, 1272 (Del.2007) ("Delaware has no statute of limitations governing judgments or actions on judgments. There is only a rebuttable common law presumption of payment after twenty years.").

28. *Gamles,* 939 A.2d at 1271.

29. *Id.* at 1271–72. This case did, however, deal with a judgment based on a mortgage, which is subject to different statutory provisions, and is therefore not directly controlling in this case.

30. *Id.* at 1271–73.

1957, which held that Delaware does not have a statute of limitations on judgments, but only a rebuttable common law presumption of payment after twenty years.[31] Taken together, *Gamles* and *Guayaquil* suggest Woolley's reading of § 5072, which is that § 5072 acts to limit the time period within which a creditor can execute a judgment without first filing a motion to refresh the judgment to five years, is correct.

By contrast, Knott's arguments that the General Assembly intended § 5072 to be read as a five year statute of limitations on judgments are unconvincing. Knott argues only that "[a]lthough the enactment of § 5072 did expand the time to seek execution on judgments from one (1) year and one (1) day to five (5) years from issuance, the policy behind limitations on collection of judgments is to prevent satisfied judgments from remaining on the books."[32] Knott claims that "[i]nherent in this analysis is recognition that a judgment creditor must take some affirmative steps to assert its interests or lose its ability to do so."[33] But nothing inherent in the extension of the time period from one year and one day to five years compels that conclusion.

Knott's only other argument in favor of her reading of § 5072 as a five year statute of limitations, is that it "promotes the societal goal of diligent prosecution of claims and execution on judgments."[34] Knott does not argue that this was the intent of the General Assembly when it enacted § 5072, only that diligent prosecution of claims is a societal goal. But the requirement of a motion to refresh gives the Superior Court the discretion not to refresh a judgment if a creditor has not acted with diligence or if there is some basis for concluding that continued enforcement of the judgment would be inequitable. We agree with the Creditor's argument that Knott's interpretation of § 5072 would bar not only judgment creditors who had not diligently executed their judgments within five years from executing their judgments, but also judgment creditors who had diligently executed on the judgment but whose judgment had not been satisfied by the expiration of the five year period.[35]

At oral argument on appeal, this Court noted that 10 *Del. C.* § 5073 was likely the relevant statute that applied to the judgment against Knott, because that judgment had been entered in the Court of Common Pleas and transferred to the Superior Court. Knott acknowledged that, but argued that § 5073 also acts as a five

31. 132 A.2d 60, 66 (Del.1957) ("In Delaware there is no statute of limitations as to judgments or actions on judgments. There is only the rebuttable common law presumption of payment after twenty years."); *see also* Woolley § 965 ("Strictly speaking, there is no statute of limitations upon judgments. There is, however, respecting judgments, a limitation by presumption, and a limitation of the lien of the judgments prescribed by statute. A judgment in contemplation of law, is *presumed* to be paid and satisfied in twenty years after the debt becomes due and payable.") (emphasis in original).

32. Opening Br. at 16.

33. Opening Br. at 16–17.

34. Opening Br. at 12.

35. Answering Br. at 9. In other words, if § 5072 acts to bar a judgment creditor who has not executed on a judgment within five years from ever executing on that judgment, the plain terms of the statute would also bar a judgment creditor who had executed, for example, on the wages of the judgment debtor during the first five years of the life of the judgment from executing on any other asset of the judgment debtor after five years had passed, even if the judgment debtor subsequently became unemployed or his wages were insufficient to satisfy the judgment.

year statute of limitations. But, like § 5072, § 5073 does not operate as a five year statute of limitations on the right of a judgment creditor to execute on a judgment. Section 5073 provides that:

> An execution may be issued upon a judgment recovered before the Court of Common Pleas or a justice of the peace, and of which a transcript has been filed and entered in the Superior Court, or on a judgment upon an appeal from the Court of Common Pleas or a justice of the peace, at any time within 5 years from entering the transcript, or giving the judgment on appeal, without scire facias . . .

The language of § 5073 clearly indicates that a judgment creditor can execute on a judgment that was recovered in the Court of Common Pleas and then transferred to the Superior Court at any time within five years without resorting to a writ of *scire facias*. By implication, a judgment creditor can execute on a judgment after five years if a writ of *scire facias* is used.

Although neither § 5072 nor § 5073 imposes a five year statute of limitations on the ability of a judgment creditor to execute, those statutes are distinct in one respect. Section 5072 does not identify the procedure that a judgment creditor must follow to execute on a judgment after five years. At common law, the judgment creditor would have proceeded through the use of a writ of *scire facias*, which is the equivalent of the modern rule to show cause.[36] Because § 5072 is silent as to the procedure that the judgment creditor must follow, Superior Court Civil Rule 64.1—

which states that "[e]xcept where a rule to show cause is required by statute, any matter of the type heretofore brought before the Court by rule to show cause shall be initiated by motion"—allows judgment creditors to proceed by motion to refresh the judgment. But § 5073 is somewhat different. Its text states that a judgment creditor may execute at any time within five years without a writ of *scire facias*, implying that the judgment creditor can only execute after five years with a writ of *scire facias*. Because the statute explicitly refers to the writ of *scire facias*, it may be that the judgment creditor is required to proceed by using a writ of *scire facias*, and cannot proceed through motion practice under Rule 64.1.

■ Thus, because the judgment in this case was originally entered in the Court of Common Pleas and was later transferred to Superior Court, the Creditor may have been required under § 5073 to proceed by using a writ of *scire facias* rather than a motion to refresh the judgment. But Knott waived any argument that the applicable statute was § 5073 by failing to present that argument to the Superior Court. The interests of justice do not require us to consider the argument on appeal.[37] Knott has never complained that the Creditor used the wrong procedures or that it should have used a writ of *scire facias* instead of a motion to refresh. Rather, Knott has maintained only that the Creditor could not execute on the judgment at all after five years had elapsed. The Creditor's decision to proceed to refresh the judgment by motion rather than by a

---

36. *See supra* note 24 and accompanying text.

37. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."); *see also Scion Breckenridge*

*Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 679 (Del.2013) (explaining that this court may consider an argument not fairly presented to the court below "only if the interests of justice require us to do so.").

writ of *scire facias* did not deprive Knott of any due process right or subject her to any unfairness. Because Knott has never claimed that she was denied any right, or was prejudiced in any way, by the Creditor's use of a motion to refresh under § 5072, the interests of justice do not require us to consider on appeal whether the Creditor should have proceeded under § 5073 instead. Indeed, the use of a motion to refresh rather than a writ of *scire facias* appears to have advantaged, rather than prejudiced, Knott. Had the Creditor proceeded by writ of *scire facias*, Knott would have been required to appear and show cause why the Creditor could not execute on the judgment. By proceeding through a motion to refresh the judgment, the Creditor assumed the burden to show that the judgment should be refreshed.

## IV. *Conclusion*

The Superior Court correctly held that § 5072 is ambiguous, that the General Assembly did not intend § 5072 to serve as a statute of limitations in the manner that Knott suggests, and that the Creditor's Motion to Refresh was proper under § 5072. Any argument that the Creditor should have proceeded under § 5073 rather than § 5072, was waived by Knott, and Knott was not prejudiced in any way by Creditor's failure to comply with the procedural requirements of § 5073. Thus, the Superior Court's grant of the Creditor's Motion to Refresh is AFFIRMED.