**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

February 17, 2016

Patrick Scanlon, Esquire
Law Offices of Patrick Scanlon, P.A.
203 NE Front Street, Suite 101
Milford, DE 19963

Dean A. Campbell, Esquire
The Law Office of Dean A. Campbell, LLC
Georgetown Professional Park
20175 Office Circle
Georgetown, DE 19947

RE:  Delaware Acceptance Corporation, CACV of Colorado, LLC and 202
Investments, Inc., v. Estate of Frank C. Metzner, Sr., Lona C. Metzner,
Executrix, Frank C. Metzner, Jr., the Metzner Family, LLC
C.A. No. 8861-MA

Dear Counsel:

Pending before me are a Motion for Summary Judgment and a "Motion for
Reargument and Motion for Relief from Judgment/Order of, in the alternative, a
Motion for Clarification" filed by Defendants Estate of Frank C. Metzner, Sr.,
Lona C. Metzner, Executrix, Frank C. Metzner, Jr., and the Metzner Family, LLC.
For the reasons that follow, I recommend that the Motions for Summary Judgment,

Reargument and Relief from Judgment be denied. I shall, however, clarify my order compelling the production of metadata from the computer network of Defendants' former law firm.

The current litigation arose after Plaintiffs Delaware Acceptance Corp. CACV of Colorado, LLC and 202 Investment, Inc. (hereinafter "the Creditor") filed a claim in the Sussex County Register of Wills Office for $41,002.59 against the Estate of Frank C. Metzner, Sr. based on a Charging Order against the late Mr. Metzner's interest in the Metzner Family, LLC.[1] The Estate denied the claim by letter dated June 3, 2013,[2] and the Creditor thereafter filed a timely complaint in this Court on September 3, 2013,[3] alleging that the Metzner Family, LLC had dissolved following the death of Mr. Metzner on October 26, 2012, and that Mr. Metzner's 49% interest in the Metzner Family, LLC had passed to the Estate and was subject to creditors' claims. The Creditor now seeks the removal of the

---

[1] Ex. A of Verified Complaint. Docket Item ("DI") 1.

[2] The letter stated that "[t]he estate is devoid of assets other than the LLC interests against which you already have a Charging Order. This being the case your claim is denied. It is understood that your Charging Order is not dissolved by the death of Mr. Metzner and that his interest transferred under his Will is transferred subject to your Charging Order. By copy of the letter, I am suggesting the beneficiary consider making a settlement offer to you." Ex. B of Verified Complaint. DI 1.

[3] *See* 12 *Del. C.* § 2102(c): Any claim not barred under subsections (a) and (b) of this section, which has been rejected by an executor or administrator shall be barred forever unless an action or suit be commenced thereon within 3 months after the executor or administrator has notified the claimant of such rejection by writing delivered to the claimant in person or mailed to the claimant's last address known to the executor or administrator[.]"

executrix for cause and the appointment of a new executor with an order to (a) dissolve the Metzner Family, LLC, (b) liquidate the assets of the LLC, and (c) make disbursements to the Creditor as required by the Charging Order. In their Answer, Defendants deny that the Metzner Family, LLC has dissolved, and attach a copy of a letter purportedly executed on November 30, 2012, by the surviving members of the Metzner Family, LLC, i.e., Lona C. Metzner and Frank C. Metzner, Jr., electing to continue the LLC as required by Article I section 1.5 of the Metzner Family, LLC Operating Agreement.[4]

The Charging Order was issued upon a complaint filed by the Creditor against Mr. and Mrs. Metzner, and the Metzner Family, LLC in 2007.[5] As alleged in this complaint, on September 16, 2002, the couple deeded their home in Lewes, Delaware, to the Metzner Family, LLC and sold their household goods to their son, Frank Jr. In 2003, the couple stopped paying on all of their credit cards, whose outstanding balances totaled approximately $55,000, and Mr. Metzner surrendered his car to the finance company holding a lien on it. After that time, Mr. Metzner drove a truck owned by his son. According to the complaint, the documents produced in discovery showed that Mr. and Mrs. Metzner were the only two members of the Metzner Family, LLC, but Mr. Metzner testified that he and his

---

[4] Ex. C of Answer to Verified Complaint. DI 24.
[5] *Delaware Acceptance Corp., et al. v. Frank C. Metzner et al.,* C.A. No. 2898-MG. (Del. Ch.), DI 1

wife together owned 98 percent and their son owned two (2) percent. The Creditor sought a charging order and the appointment of a receiver to rent or sell the real estate and to use the proceeds to pay the Creditor.

On June 2, 2009, the Creditor moved to amend its complaint to add a claim for relief under the theory of reverse veil piercing, alleging that the LLC had no other purpose than to improperly shield the couple's assets from creditors.[6] In his Final Report, the Master denied the motion to amend because the Creditor had not availed itself of the statutory right to set aside the transfer of property within one year of its discovery.[7] The Master found any action under this theory would be barred by *laches* and, therefore, an amendment would be futile. The Master then signed an order to issue a Charging Order on December 6, 2010,[8] and the Charging Order was subsequently served on the Metzner Family LLC to attach any distributions owing to either Frank C. Metzner or Lona C. Metzner related to their respective interests in the LLC, to satisfy the debts owed by the couple, individually and jointly, to the Creditor.

Now, Defendants argue that they are entitled to summary judgment because the Charging Order had expired by operation of law as of June 23, 2011. According to Defendants, the Court of Common Pleas judgments, on which the

---

[6] *Id.* at DI 47.

[7] *Id.* at DI 67 (Master's Final Report, dated October 29, 2010, at 11, citing 6 *Del. C.* § 1301 *et seq.* (the Uniform Fraudulent Transfers Act))

Charging Order was based, were all entered before 2006, and under 10 *Del. C.* §

5073, the judgments expired after five years. Defendants argue that the only

mechanism by which a Court of Common Pleas judgment can be revived is by writ

of *scire facias*. Since the Creditor has never obtained a writ of *scire facias*, both

the judgments and the Charging Order had lapsed by the time of Mr. Metzner's

death. Thus, according to Defendants, the Estate properly denied the Creditor's

claim.

In response, the Creditor simply quotes from *Gamles Corp. v. Gibson*, 939

A.2d 1269, 1272 (Del. 2007) as follows: "Delaware has no statute of limitations

governing judgments or actions on judgments. There is only a rebuttable

presumption of payment after twenty years."

10 *Del. C.* § 5073 states in pertinent part:

> An execution may be issued upon a judgment recovered before the
> Court of Common Pleas or a justice of the peace, and of which a transcript
> has been filed and entered in the Superior Court, or on a judgment upon an
> appeal from the Court of Common Pleas or a justice of the peace, ***at any
> time within 5 years*** from entering the transcript, or giving the judgment on
> appeal, ***without scire facias*** …..[9]

The Creditor correctly observes that there is no statute of limitations on judgments.

A charging order is "a form of execution permitting a judgment creditor to divert a

flow of payments from the judgment debtor to the party obtaining the charging

---

[8] *Id.* at DI 72.
[9] 10 *Del. C.* § 5073 (emphasis added).

order."[10]  In this case, an execution, i.e., the Charging Order, was issued on December 6, 2010, within the five-year period under § 5073 when an execution may be issued without *scire facias*. The fact that the Creditor never obtained a writ of *scire facias* is irrelevant since the Creditor did not wait more than five years to execute upon its judgments and, therefore, did not need to ask permission of the Superior Court before filing its claim against the Estate.[11]  Therefore, I recommend that the Court deny the Defendants' motion for summary judgment.

Although execution issued in 2010, so far the Creditor has been unable to satisfy its judgments. Under the Charging Order, the Creditor is only entitled to divert a flow of payments from the LLC to its members who are the judgment debtors, and there have never been any payments or distributions from the Metzner Family, LLC to Mr. and/or Mrs. Metzner. The only asset of the LLC is the Metzners' house and, until Mr. Metzner's death, the couple resided in their house, and Mrs. Metzner continues to reside there. Under the terms of the Metzner Family, LLC Operating Agreement, however, the death of a member is considered a withdrawal, resulting in the dissolution of the LLC unless the surviving members elect to continue the LLC within 90 days of the death of the member. After Mr.

---

[10] *MacDonald v. MacDonald*, 1986 WL 5480, at 4 (Del. Ch. May 9, 1986) (citing 6 *Del. C.* § 17-703).

[11] *Compare Knott v. LVNV Funding, LLC*, 95 A.3d 13, 17-20 (Del. 2014) (where creditor did not attempt to execute on a judgment for more than nine years, and then creditor moved to refresh the judgment under 10 *Del. C.* § 5072).

Metzner's death, the Creditor filed a claim against the Estate in the belief that the Metzner Family, LLC had dissolved and Mr. Metzner's 49% interest in the assets of the LLC had passed to his Estate. The subsequent appearance of a document purporting to be an Election to Continue the Metzner Family, LLC (hereinafter "the Election") signed by Mrs. Metzner and Frank, Jr. within the 90-period following Mr. Metzner's death led to the discovery issue that I will now address.

On March 24, 2015, the Creditor moved to compel Defendants' responses to its third request for production.[12] The Creditor was seeking the production of documents from the file of Harold W.T. Purnell II, Esquire, an attorney who had drafted the Election, in order to determine the date the Election was drafted or, if the file was not sufficient to establish the date, then the Creditor wanted access to the metadata on the computer used by Mr. Purnell. The Defendants objected to the production request, asserting attorney-client privilege, but the Creditor expressed a reasonable belief that the Election had been backdated to appear as if the document had been executed within the 90-day period.[13] After the Defendants failed to

---

[12] DI 41.

[13] The Election is dated November 30, 2012, and was signed by Mrs. Metzner and her son. In her deposition, Mrs. Metzner testified that her son had driven her to Mr. Purnell's office on November 30, 2012, where they both had signed a lot of papers. Ex. E, Plaintiffs' Motion to Compel. Frank, Jr. had no specific recollection of the event, but in his deposition he acknowledged his signature on the Election. Ex. F, Plaintiffs' Motion to Compel. Mr. Purnell testified in his deposition that he had created the document but, according to his work calendar, he had no appointment with Mrs. Metzner on November 30, 2012. Ex. G, Plaintiffs'

respond to the Creditor's motion to compel, on April 21, 2015, I issued an order directing the Defendants to produce their attorney's file "limited to evidence which would establish the date on which Mr. Purnell created the Election and/or the metadata on the computer used by Mr. Purnell limited to establishing the date the Election was created or to produce the same above for an *in camera* review by the Court."[14]

On April 22, 2015, the Defendants filed their current motions, arguing that the Court should vacate or revise its order because it is impossible for Defendants to perform since the metadata is located outside of the State of Delaware in the possession of Mr. Purnell's previous law firm, which is based in New Jersey.[15] On May 1, 2015, I nevertheless received a letter with several attachments from the

---

Motion to Compel. Mr. Purnell did not remember when he had created the document, but he testified that if the document had been executed in his presence, he probably would have signed as a witness. *Id.* Although the Election contains two blank lines where a witness was supposed to sign next to the signatures of Mrs. Metzner and Frank, Jr., no witness signed the Election.

[14] DI 46.

[15] Attached to Defendants' motions was an affidavit of Mr. Purnell averring that in October/November 2012, he was associated with the law firm of Archer & Greiner, P.C. a New Jersey based firm with offices in Delaware, and on September 1, 2014, he left that firm and became associated with the firm of Cooch & Taylor, PA. The computer records would have been saved, if at all, on the network server of Archer & Greiner located in New Jersey, and Mr. Purnell no longer had access to that network server. Ex. A, Defendants' Motion for Re-Argument, Motion for Relief from Judgment/Order or, in the alternative, Motion for Clarification. DI 46.

Defendants for *in camera* review.[16]  None of these documents establish the date of the creation of the Election.  Furthermore, in a supplemental affidavit[17] - attached as Exhibit D – Mr. Purnell averred  that the document in question may not have been saved on Archer & Greiner's network server because the Election lacks a document location number in the lower left corner.

Assuming the document was saved on the law firm's network server when it was created, metadata may be helpful in establishing whether the document which purports to be a timely-executed election to continue the entity by the surviving members of the Metzner Family, LLC was, in fact, executed within 90 days following the death of Mr. Metzner.  If the metadata were to show that the document had been created after the 90-day period had expired, i.e., after January 23, 2014, such evidence would support the Creditor's position that the Estate wrongfully denied its claim.  Therefore, I conclude that the Creditor has made a particularized showing of need for the metadata entitling the Creditor to discovery of electronically stored data.[18]  In a letter to the Court dated May 5, 2015, counsel for the Creditor stated that the Creditor has retained an expert on metadata and is

---

[16] Although they were submitted to the Court for *in camera* review, copies of all the documents except one exhibit (Exhibit E) were sent to the Creditor.

[17] I am presuming that a copy of the supplemental affidavit (Exhibit D) was sent to the Creditor.

[18] *Ravenswood Investment Co., LP v. Winmill*, 2013 WL 6228805, at *3 (Del. Ch. Nov. 27, 2013) (citing *Kenexus Representative LLC v. Advent Software, Inc.* 2008 WL 4379607 (Del. Ch. Sept. 22, 2008)).

prepared to shoulder the costs of this discovery. Therefore, I recommend that the Court approve the motion for clarification to the extent that I am clarifying the April 21, 2015 Order to allow the Creditor to compel the production of the metadata from Archer & Greiner, with the understanding that the Creditor has volunteered to bear the cost of the production and analysis. If I have misunderstood the Creditor's offer, then the Creditor should not hesitate to contact the Court accordingly.

For the reasons stated above, I recommend that the Court deny Defendants' motions for summary judgment, re-argument and relief from judgment, but grant their motion for clarification.

I have reviewed the parties' briefs on the exceptions taken to my draft report by Defendants Estate of Frank C. Metzner, Sr., Lona C. Metzner, Executrix, Frank C. Metzner, Jr., and the Metzner family, LLC. I see no reason to change my recommendation. Therefore, I am adopting my draft report as my final report. I refer the parties to Rule 144 to for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz