# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LAWRENCE E. MERGENTHALER<br>a resident of the State of Delaware,<br><br>Plaintiff,<br><br>v.<br><br>TRIUMPH MORTGAGE CORP.<br>a Delaware Corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 09C-09-203 AML |

Submitted: April 6, 2017
Decided: April 27, 2017

## COMMISSIONER'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTIONS TO QUASH WRIT OF ATTACHMENT FI. FA.

John A. Sergovic, Jr., Esq., SERGOVIC & CARMEAN, P.A., 30 E. Pine Street, Ste. 1, P.O. Box 751, Georgetown, DE 19947. Attorney for Plaintiff.

Richard L. Abbott, Esq., ABBOTT LAW FIRM, 724 Yorklyn Road, Suite 240, Hockessin, DE 19707. Attorney for Defendant.

**MANNING, Commissioner:**

Pursuant to 10 *Del. C.* § 512 and Superior Court Civil Rule 132(a)(4), the above captioned case was referred to the undersigned Commissioner on April 6, 2017, for findings of fact and a recommendation. Accordingly, I have reviewed the parties' submissions and a transcript of the hearings held on March 2nd and 8th, 2017. Based on the record before me, I find and recommend as follows:

### Facts and Procedural Background

The facts in this action are not in dispute; the question presented is purely one of law. In summary: on January 15, 2010, Lawrence E. Mergenthaler obtained a default judgment against Triumph Mortgage Corporation, in the New Castle County Superior Court, for failing to pay on two loans totaling over $207,000. On November 18, 2010, a Testatum *Fieri Facias* ("Fi. Fa.") was filed transferring the judgment to both Kent and Sussex counties.[1] Between April 4, 2010 and December 21, 2011, Mergenthaler filed numerous Writs of Attachment Fi. Fa. garnishment on various individuals and businesses in an attempt to satisfy the debt. Mergenthaler filed an additional writ of garnishment on February 7, 2013.[2]

On November 29, 2016, Mergenthaler filed a Praecipe seeking the Writ of Attachment presently at issue. On December 2, 2016, the writ was issued and served by the sheriff upon Merrill Lynch. The writ was addressed to "ACCOUNT

---

[1] D.I. #6 and 7.

[2] D.I. #90

2

MANAGER, MERRILL LYNCH, of 1201 Market Street, Suite 2000, Wilmington, Delaware 19801 ("Garnishee") to garnish any liquidation of the pledge of stock of Kathy L. Galvin, Account No. 753-97256, owed her indebtedness to Defendant, Triumph Mortgage Corporation to Plaintiff, Lawrence E. Mergenthaler, under the judgment in this action." The account was subsequently liquidated and by agreement of the parties, the proceeds were deposited with the Prothonotary pending a final, non-appealable ruling in this action.

It is undisputed that at no time did Mergenthaler return to this Court and seek to renew the judgment prior to issuing the 2016 writ.

## Defendant's Arguments

Triumph has filed two separate motions to quash the writ of attachment served on Merrill Lynch. In its first motion, Triumph argues that because "Merrill Lynch was merged into Bank of America Corporation" on October 1, 2013, it is immune from the attachment laws of this State pursuant to 10 *Del. C.* § 3502(b).[3] In its second motion, Triumph argues that the judgment is stale under 10 *Del. C.* § 5702(a) "due to its 5+ year age at the time the Writ was issued," making it "invalid." Additionally, Triumph argues that because no writs of attachment were issued within the first year and one day of the judgment being entered on January

---

[3] 10 *Del. C.* § 3502(b) Banks, trust companies, savings institutions and loan associations, except only as to a wage attachment against the wages of an employee of the bank, trust company, savings institution or loan association, shall not be subject to the operations of the attachment laws of this State.

3

15, 2010, the judgment is stale and the common law prevents further execution attempts. Mergenthaler disputes this interpretation of the law and argues that the five year window for collecting on a judgment—without the need to renew it— was expanded to 10 years with the adoption of Superior Court Civil Rule 69(a) when it is read in conjunction with 10 *Del. C.* § 4711.

## Standing

Although the issue was not briefed, the issue of standing was raised by the parties during argument before the Court. Because standing is a threshold issue, I will address it first. At the hearing, Mergenthaler briefly argued that Triumph did not have sufficient standing to "raise any issues with respect to [its] praecipe on [Merrill Lynch]."[4] Conversely, Triumph contended that "it's our money," that it's "within the zone of interest" to be protected and that if the garnishment is allowed to proceed, it will cause injury.[5]

As a general matter, "[s]tanding is the requisite interest that must exist in the outcome of the litigation at the time the action is commenced."[6] As further explained by the Delaware Supreme Court:

> The concept of standing, in its procedural sense, refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance. It is concerned

---

[4] Tr. at 30.

[5] Tr. at 47.

[6] *Schoon v. Smith*, 953 A.2d 196, 201 (Del. 2008).

4

only with the question of *who* is entitled to mount a legal challenge and not with the merits of the subject matter of the controversy. In order to achieve standing, the plaintiff's interest in the controversy must be distinguishable from the interest shared by other members of a class or the public in general. ... state courts apply the concept of standing as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are mere intermeddlers."[7]

Applying the above law to the facts of this case, it is evident that Triumph has standing to at least object to the garnishment levied against Merrill Lynch by Mergenthaler. There is no dispute among the parties that the money in question belongs to Kathy L. Galvin who, in turn, had pledged it as collateral to Triumph. According to information in the docket, Triumph sent a letter to Merrill Lynch requesting that the stock be liquidated and turned over to Triumph because Galvin had defaulted on her loan obligations.[8] Thus, if the money is garnished and turned over to Mergenthaler, Galvin and Triumph would, arguably, suffer injury. As to this issue, Mergenthaler's argument is without merit.

## Merrill Lynch's Status

Triumph's argument that Merrill Lynch is exempt from attachment under Delaware Law is misplaced. Mergenthaler presented substantial evidence in his Response establishing that the entity served was, in fact, Merrill Lynch, Pierce,

---

[7] *Schoon*, 953 A.2d 201 (internal quotation marks omitted).

[8] DI #96, "Exhibit 1."

5

Fenner & Smith ("MLPF&S"), who is a registered broker dealer and a separate Delaware Corporation from Merrill Lynch. Exhibit 3 to Mergenthaler's Response is a copy of the merger between Merrill Lynch and Bank of America purporting to show that MLPF&S was not merged into or otherwise absorbed as part of the merger. Additionally, in Exhibit 4, Mergenthaler provided a list of all Delaware banking institutions, as recognized by the State Banking Commissioner—nowhere on the list is MLPF&S identified as a bank. Finally, in Exhibit 5, Mergenthaler attached a copy of the 1958 Certificate of Incorporation of MLPF&S showing that it "shall not in any jurisdiction carry on the business of banking... ." Aside from the merger with Bank of America, Triumph has presented no evidence that MLPF&S is engaged in the business of banking, is a trust company, savings institution or loan association. Based on the information presented, I am satisfied that MLPF&S is subject to the attachment laws of this State.

## Validity of the Writ

The ultimate question before the Court is whether or not a valid execution writ may issue upon a judgment that is more than five years old, but less than ten years old, that has never been renewed. My review of the applicable statutes, Superior Court Rules and decisional-law indicates that this is a question of first-impression.

6

Triumph argues that "[b]ecause the Judgment was over 5 years old when the Writ was requested and issued in November of 2016 (nearly 7 years later), execution process was not issuable and therefore the Writ was a legal nullity." In the alternative, Triumph also argues that based on the last sentence of Section 5702, ("[a]s to all other cases the law shall remain unaffected"), that the common law year and a day rule applies, making the writ invalid because no execution process was issued during that initial period.

In response, Mergenthaler argues that his filing of the two *Testatum Fi Fa* documents with the Court was a form of execution process. I do not find this argument persuasive. The documents merely served to transfer the judgment, as a matter of record, to the prothonotary in Kent and Sussex counties so writs of execution could then be subsequently issued.

It is true, as argued by Triumph, that at common law there was a rebuttable presumption of full payment after a year and a day, and that no execution process could issue if none had been made within that same time period. However, that rule, and the arcane process once used to circumvent it, known as *vice comes*,[9] was superseded by the adoption of 10 *Del. C.* § 5072 in 1857.[10]

---

[9] 2 Victor B. Wolley, Practice In Civil Actions, § 1312 at 890 (WM. W. Gaunt & Sons, Inc. 1985).

[10] "Woolley explains that the right to issue execution process upon a judgment at any time after a year and a day and within the life of the judgment, without *scire facias*, if a *vices comes* had

10 *Del. C.* § 5072 states:

> Execution on judgments in civil actions.
>
> (a) An execution may be issued upon a judgment in a civil action at any time within 5 years from the time when such judgment was entered or rendered, or from the time when such judgment became due; or to collect any installment of a judgment within 5 years from the time when such installment fell due.
>
> This section shall only apply to cases when no execution has been previously issued to collect such judgment or installment, and to cases where 1 or more have been issued for such purpose, and it appears by the return of the officer that such judgment or installment, as the case may be, has not been paid or satisfied. As to all other cases the law shall remain unaffected.
>
> (b) No judgment shall be deemed to be paid or satisfied, in whole or in part, by a levy on execution process, unless it appears otherwise than by the fact of such levy that such payment or satisfaction has been made.

In *Knott v. LVNV Funding*, the Delaware Supreme Court examined the history of execution writs and Section 5072 in light of Victor B. Woolley's well known treatise on Delaware civil practice.[11] The holding in *Knott* is not on-point

---

been entered thereon, maintained in Delaware until the enactment of 5072." *Knott v. LVNV Funding*, LLC, 95 A.3d 13, 17 (Del. 2014) (internal quotation marks and punctuation omitted).

[11] 95 A.3d 13, 18 (Del. 2014) (citing Victor B. Woolley, *Practice in Civil Action and Proceedings in the Law Courts in the State of Delaware* (1906)).

8

with the specific issue presented here.[12]  However, the Court did cite to Woolley for the proposition that "[Section 5072] extended the time period when execution could be issued without resorting to *scire facias*, from one year and one day, to five years."[13]  Accordingly, the fact that Mergenthaler did not issue any type of execution process—on anyone— within the first year and one day after entry of the judgment was entered, is no longer relevant under the current state of the law.  The fact that the judgment had not been renewed after five years had elapsed is a separate issue.

Turning to the facts of this case, there is no dispute that the writ at issue here was issued upon a judgment more than five years old, but less than ten, that had not been renewed in any way.  In his motion, Mergenthaler argues that the writ "is a valid and timely execution levied within the time in which the lien against real property under 10 *Del. C.* § 4711 applies to judgments, without renewal."  And, most germane to the issue here, Mergenthaler writes that "Superior Court Rule 69(a) and 10 *Del C.* § 561(d) authorizes the Garnishment served upon MLPF&S before the running of 10 years... *notwithstanding* 10 *Del C.* § 5072."[14]  During

---

[12] In *Knott*, the judgment creditor moved to renew the judgment nine years after it was entered—but before attempting to execute on it.  Thus, the Court in *Knott* was not presented with the question of what effect Rule 69(a) has on the period during which an execution writ can be issued before needing to refresh the judgment.

[13] *Knott,* 95 A.3d 18.

[14] (emphasis added).

9

argument, Triumph disputed this construction, calling it "an absurd proposition" and that "implied repealer" is "heavily disfavored in Delaware."[15]  Hyperbole aside, Triumph's argument goes directly to the heart of the issue: can a court rule validly contravene statutory law?

## Validity of Rule 69(a)

"There is no doubt at all that courts, particularly in Delaware, have long had the inherent authority to promulgate rules governing practice before them, and, by such rules, to require the taking of certain steps within certain times."[16]  Ultimate authority for the Superior Court to issue rules is found in 10 *Del. C.* § 561.  The statute provides:

> Rules of Court in civil actions.
>
> (a) The Judges of the Superior Court, or a majority of them, may, from time to time, adopt and promulgate general rules which prescribe, establish and regulate the form, issuance and return of process and writs, the form and system of pleading, and all other practice and procedure with respect to the commencement, trial, hearing and determination of civil actions in the Superior Court.
>
> (b) Such rules shall be for the purpose of securing the just and, so far as possible, the speedy and inexpensive determination of every such action. The rules shall not abridge, enlarge or modify any substantive right of any

---

[15] *T.* at 37 – 38.

[16] *State ex rel. Massey v. Terry*, 148 A.2d 102, 105 (Del. 1959) (holding that the county board of canvass, as a judicial tribunal, has the inherent power to make rules and regulations governing the proceedings before it).

10

party, and they shall preserve the right of trial by jury as at common law and as declared by the statutes and Constitution of this State.

(c) The rules so adopted and promulgated, and all amendments thereof, shall, after they have taken effect, supersede all statutory provisions in conflict or inconsistent therewith.

(d) Any inconsistency or conflict between any rule promulgated under the authority of this section or prior law, and any of the provisions of this Code or other statute of this State dealing with practice or procedure in the Superior Court, shall be resolved in favor of such rule of court. Nothing in this Code, anything therein to the contrary notwithstanding, shall in any way limit, supersede or repeal any rule heretofore promulgated governing practice or procedure in civil actions in the Superior Court.

(e) As used in this section, the phrase "civil actions in the Superior Court" includes proceedings of every kind or character within the jurisdiction of that Court except criminal proceedings.

Thus, Section 561(a) gives the Superior Court the authority to enact rules of "practice and procedure" that might contravene "prior law," so long as, pursuant to subsection (b), the rules do not "abridge, enlarge or modify any substantive right of any party." Under subsection (c), "once rules are adopted, they supersede all statutory provisions in conflict or inconsistent therewith."[17] And, subsection (d) "provides that any inconsistency or conflict between a court rule and a statute be

---

[17] *Fleming v. Jackson*, 888 A.2d 321, *1 (Del. 2005).

11

resolved in favor of the court rule."[18]    By enacting Section 561, the legislature

delegated to the Superior Court the authority to overrule its prior legislation, but

only as to matters of practice and procedure within the Court itself. Undoubtedly,

the legislature did not wish to concern itself with the task of enacting the day-to-

day operating rules of the Superior Court.

Superior Court Civil Rule 69 provides:

> Execution.
>
> (a) In general. -- Except as herein provided the procedure
> on execution shall be as heretofore. An execution may be
> issued upon a judgment in a civil action at any time after
> such judgment was entered or rendered during the period
> that such judgment would constitute a lien upon the real
> property of the judgment debtor. The fictitious writ of
> vice comes or v.c. is hereby abolished.

Therefore, it would appear, with the adoption of Rule 69(a), the time period

during which a judgment may be executed upon was enlarged to that as the same

time period in which the judgment operated as a lien on the real property of the

judgment debtor.

However, the language in Rule 69(a) only becomes applicable to the facts of

this case when read in conjunction with 10 *Del. C.* § 4711. That statute provides,

in pertinent, part:

> No judgment for the recovery of money entered or
> recorded in the Superior Court... shall continue a lien

---

[18] *Id.*

12

upon real estate for a longer term than 10 years next following the day of entry or recording of such judgment… unless, within the term of 10 years, the lien of such judgment is renewed…

No judgment which is a general lien, including judgments for costs and judgments in favor of the State or any political subdivision thereof, shall remain a lien for more than the 10-year period hereinabove provided, unless renewed for a further 10-year term in accordance with the provisions of this section.

Thus, when read together, the plain language of Rule 69(a) unequivocally modifies the time period during which an execution upon a judgment can be issued so that it coincides with the same period of time during which the judgment operates as a lien upon the real estate of the judgment debtor— ten years per Section 4711.

It is well established that the five or ten year period does not act as a limitation upon the validity of the judgment itself. In *Gamles Corp. v. Gibson*, the Delaware Supreme Court held that after the expiration of 10 years, although still valid and enforceable, the judgment no longer operated as a lien upon the real estate of the judgment debtor, unless renewed upon motion to the Court.[19] Although the judgment in *Gamles* had not been renewed after ten years, the Court held that the wage attachment—still then operative—survived the expiration of the ten year period when the judgment operated as a lien against real estate under

---

[19] *Gamels CORP. v. Gibson, 393 A.2d 1269,* 1272 (Del. 2007).

Section 4711. The Court held that judgments in Delaware do not expire, "[t]here is only a rebuttable common law presumption of payment after twenty years."[20]

As previously discussed, Rule 69 may supplant a conflicting statute, but only if it is one of "practice and procedure." To frame the question in the context of the facts here: is the expansion of the ability to execute on the judgment, from five years to ten, without the need to renew the judgment, a substantive right, or one merely a matter of procedure? Again, no Delaware Court appears to have addressed this specific question.

In *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, the United States Supreme Court examined a conflict between the Federal Rules of Civil Procedure and New York State law.[21] The Court noted that "Congress authorized this Court to promulgate rules of procedure subject to its review, 28 *U.S.C.* § 2072(a), but with the limitation that those rules shall not abridge, enlarge or modify any substantive right."[22] Notably, the pertinent statutory language of 10 *Del. C.* § 561(b) and 28 *U.S.C.* § 2072(b) is identical.[23]

---

[20] *Id.*

[21] 559 U.S. 393, 407 (2010) (internal quotation marks omitted).

[22] *Id.*

[23] 28 U.S.C. § 2072: Rules of procedure and evidence; power to prescribe
(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.

14

Expounding upon the doctrine, the Court held that "the Rule must really regulate procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress...."[24] Most relevant to this case, the Court also noted that the "test is not whether the rule affects a litigant's substantive right; most procedural rules do. What matters is what the rule itself regulates: if it governs only the manner and means by which the litigants' rights are enforced, it is valid, if it alters the rules and decision by which the court will adjudicate those rights, it is not."[25]

Applying the above framework and guidance to the facts here, I am satisfied that Rule 69(a) only modified the method by which a litigant's rights are enforced—i.e. the manner and means in which a judgment can be collected. Rule 69(a) is not a modification of the substantive rights governing the actual adjudication of the judgment itself. The Rule does not create, abridge or expand any type of substantive right.[26] Rather, it merely regulates how often a judgment

---

(b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.
(c) Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title.

[24] *Shady Grove,* 559 U.S. 407, (internal quotation marks omitted).

[25] *Id.* (internal quotation marks omitted).

[26] In *Fleming v. Jackson,* 888 A.2d 231 (Del. 2005), the Delaware Supreme Court confronted a conflict between statutory law and court rules of procedure that, arguably, pushed the issue even further than presented here. In *Fleming,* the Court held that Superior Court Civil Rule 6(a) validly extended the two-year statute of limitations imposed under 10 *Del C.* § 8119 for filing a

15

creditor must come back before the Court to seek permission to continue collecting on an otherwise valid debt. Whether the judgment is initially valid for a period of five years or ten years before it needs to be renewed is a matter of procedure within the Court's authority to regulate.

## Ambiguity

In *Knott*, the Delaware Supreme Court recognized that the language of Section 5072 is ambiguous.[27] Decisional-law from this Court has grappled with the interpretation and implementation of Section 5072 for some time. In *Delmarva Auto Fin. Services v. White,* Judge Witham wrote that "[t]his Court respectfully observes that it could be argued that [Section] 5072 does in fact require a judgment creditor to revive their judgment after five years, based on the statute's use of the language '[a]s to all other cases the law shall remain unaffected.' "[28] Judge Witham also wrote that "it could be argued that [Section] 5072 implicitly requires writs of *scire facias*/rules to show cause after five years in order to revive [a] judgment."[29]

---

personal injury claim because the last day of the two-year period—when plaintiff tried to file— fell on a day the court was closed.

[27] *See Knott, Supra* at *16.

[28] 2014 WL 4230399, *9, (Del. Super. August 15, 2014).

[29] *Id.*

16

The specific question in *Delmarve Auto Fin. Services,* whether a judgment transferred to the Superior Court from the Court of Common Plea needed to be refreshed by way of a motion, or a writ of *scire facias*/rule to show cause after five years, is not on-point with the issue here. Analyzing the convoluted nature of the law in this general area, Judge Witham authored a detailed and lengthy decision with the expectation that it might be appealed to the Delaware Supreme Court who would then provide definitive guidance; unfortunately, it was not appealed.

I recognize that my decision in this matter is at odds with Judge Witham's comments. However, I would respectfully suggest that Judge Witham's comments regarding Section 5072 were *dicta* to the holding in his opinion. Additionally, I think it is important to note that Judge Witham only briefly addressed Rule 69(a), noting that it was adopted in 1962 and other than abolishing the writ of *vice comes,* it "did little to expand upon execution practice in Delaware...."[30] Most critically, because the issue was not before the Court, Judge Witham did not discuss or analyze the effect of Rule 69(a) on executions in light of Section 4711. For these reasons, I believe my Report and Recommendation in this matter stands apart from, rather than contrary to, the holding in *Delmarva Auto Fin. Services.*

---

[30] *Id.* at *3.

## Conclusion

For the forgoing reasons, I find that Rule 69(a) validly created a uniform period of 10 years during which Superior Court judgments[31] do not need to be renewed prior to issuing execution writs. Accordingly, Triumph's Motions to Quash Writ of Attachment Fi. Fa., should be DENIED.[32]

**IT IS SO RECOMMENDED.**

Bradley V. Manning,
Commissioner

Original to Prothonotary
cc:    All counsel via File & Serve

---

[31] Under Superior Court precedent, judgments transferred from the Court of Common Pleas are subject to a different procedure under 10 *Del. C.* § 5073. The specific language of the statute has been read as requiring a motion of *scire facias* to renew after 5 years has elapsed. *See Delmarva Auto Fin. Services*, *supra*, at *12 (concluding that Sections 5072 and 5073 require different procedures to renew a judgment prior to execution after five years has elapsed); *see also Knott*, *supra* at *20 (declining to definitively rule on this issue because it was not presented to the Superior Court and thus waived on appeal).

[32] One final note: it is apparent to me that the law in this area has developed over the last century and a half in a disjointed and piecemeal fashion. I strongly echo the comments by Chief Justice Strine in footnote #55 of his dissent in J.*M. Shrewberry, et al., v. The Bank of New York Mellon*, No. 306, 2016 (Del. April 17, 2017), calling for a comprehensive evaluation and overhaul of the law in this area.

18