**Ann ANGELLI as Executrix of the Estate of Alexander Sherway, Petitioner Below, Appellant,**

v.

**Anni SHERWAY, Respondent Below, Appellee.**

Supreme Court of Delaware.

Submitted: Oct. 25, 1988.
Decided: June 1, 1989.

---

Gerald Z. Berkowitz and Alan N. Cooper of Berkowitz, Greenstein, Schagrin & Coonin, P.A., Wilmington, for appellant.

Anni Sherway, pro se.

H. Alfred Tarrant, Jr. and Thomas D. Shellenberger of Cooch and Taylor, Wilmington, amicus curiae.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice:

In this consolidated appeal from two rulings of the Family Court, we are required to address novel issues concerning the appealability of the denial of a divorce petition after the death of the appellant and the status of property claims asserted ancillary to the divorce proceedings. The appellant, Ann Angelli ("Daughter"), who is the executrix of the estate of her father, Alexander Sherway ("Husband"), has succeeded to the appeal filed by Husband shortly before his death. She contends that the Family Court erred in denying Husband's divorce petition and, notwithstanding his subsequent death, that this Court should review the merits of the divorce appeal. The acknowledged purpose for Daughter's pursuit of the appeal is to provide ancillary jurisdiction for the assertion of certain claims against the appellee, Anni Sherway ("Wife"), for alleged wrongful appropriation of marital assets.

We conclude that the death of an appellant who seeks review of the denial of a divorce serves to abate any proceeding requiring a remand in the Family Court, since there is no longer any underlying marital relationship to be terminated. To the extent that certain claims of third parties may be implicated in the abated proceedings, we conclude that such claims, because they arise in a fiduciary relationship, may be asserted in the Court of Chancery.

I

Husband and Wife met in December, 1983, after Husband had placed an advertisement in the newspaper for a housekeeper/companion. Wife suggested to Husband that he actually wanted a wife and thereafter the parties were married on January 27, 1984. When the parties met, Husband was 90 years of age and Wife was 55 years of age. Three days prior to their marriage, Husband and Wife executed signature cards transferring Husband's savings and checking accounts into the parties' joint names. One day prior to the marriage Husband and Wife met with Husband's attorney at which time Husband executed a new will. That will provided for a distribution of one-half of Husband's estate to the Wife and the remainder to Husband's children of a previous marriage. In addition, Wife was designated co-executrix of the estate with Daughter.

Before the marriage Husband had solely owned a number of certificates of deposit which reached maturity between the date of marriage and September, 1984. As these certificates came due they were retitled in the names of Husband and Wife, jointly. Within a few weeks after the marriage Husband and Wife, at Wife's behest,

changed six bank accounts owned by Husband, individually, into joint accounts in the names of both Husband and Wife.

In the summer of 1984 Wife consulted with her attorney concerning Husband's real estate holdings. Wife's attorney drafted a will, for Husband's signature, which gave Wife all of the household furnishings, a life estate in the marital home, a one-half remainder interest in the marital home as tenants in common with Daughter, and a one-half share of Husband's certificates of deposit. Under this draft, Wife continued as co-executrix of Husband's estate. Husband, apparently upset by the proposed change in title of the certificates of deposit and Wife's increased share in the marital home, never executed this will.

The first indication of discord between the parties occurred in September, 1984, when Husband met with his own attorney and executed an affidavit directing his bank to "freeze" all of the parties' joint certificates of deposit and bank accounts. Husband claimed that Wife had obtained his signature, authorizing the bank to add her name to all of his existing accounts, "under false pretenses and by misrepresentation." Shortly thereafter, Wife's attorney wrote to Daughter instructing her not to make any further unannounced visits to the parties' home.

Discontent between the parties apparently waned long enough for Husband to once again accompany Wife to her lawyer's office on October 18, 1984, to execute a deed conveying the marital home into joint ownership and to execute a newly prepared will. This will left all of the household furnishings to Wife and set up a trust for certain certificates of deposit to be left to Husband's surviving children upon his death. By 1985 virtually all of Husband's property, previously held individually, had been transferred jointly into the names of both Husband and Wife.

In January, 1986, the parties separated after Husband requested Daughter to come and take him from the marital home. Specifically, Husband wrote to Daughter claiming that Wife had embezzled all of his money by tricking him and persuading him

to sign over his bank accounts. Immediately prior to Husband's departure from the marital home, Wife transferred certain proceeds from the jointly-held certificates of deposit to an investment account in her name. Wife claimed that the account remained in her name alone, because Husband left the marital home before she could attain his signature on the documents necessary to establish a new joint account.

In the spring of 1986, Husband filed a petition for divorce in the Family Court, in Kent County. Husband alleged incompatibility as the sole ground in support of his petition for divorce. After trial, the petition for divorce was denied. The Family Court found that Husband had failed to establish the necessary elements for a claim of incompatibility. Husband appealed the decision to this Court but later withdrew the appeal. On November 28, 1986, Husband filed a second divorce petition in the Family Court, in New Castle County. In this action, Husband sought a divorce on the grounds of both incompatibility and Wife's misconduct. Husband claimed that Wife continued to expend the proceeds from the certificates of deposit that he originally owned and that she had taken approximately $50,000 from him, resulting in a loss of his financial security. The Family Court dismissed the second divorce petition, concluding that Husband failed to establish misconduct and that the incompatibility claim was controlled by the Kent County denial of divorce under the doctrine of *res judicata*.

While Husband's second divorce petition was pending in the Family Court, he filed several petitions for interim relief and property distribution requesting, among other things, that the Wife be enjoined from expending any funds which she had obtained from his premarital assets. The Family Court denied the motion for interim relief as unnecessary, since the filing of the divorce petition automatically served to restrain either party from dispersing any of the marital assets. On August 26, 1987, after the denial of the divorce petition, Husband moved to enjoin Wife from withdrawing the proceeds from any bank ac-

counts created by Wife with Husband's premarital assets, whether held in individual or joint names. He further requested that Wife's individual accounts be restored to joint names. The petition was denied by the Family Court on August 31, 1987. The court held that the denial of the divorce precluded it from granting injunctive relief to prevent Wife from disposing of any marital property. The court further ruled that the "automatic restraining order" was lifted upon the denial of the divorce petition.

On September 2, 1987, Husband moved for an emergency hearing on spousal support, pursuant to 13 *Del.C.* § 1517(d) and 13 *Del.C.* § 1518(c). Husband also requested an order enjoining Wife from withdrawing any funds from the marital assets and requiring Wife to redeposit any marital assets withdrawn in defiance of the Kent County Family Court Order and for other specified relief. Husband appealed the denial of the divorce to this Court on September 4, 1987, but died three days later. On December 11, 1987, the Family Court denied Husband's motion for interim relief finding that it had no authority to grant relief after a dismissal of a divorce petition and a subsequent appeal to this Court. *Sherway v. Sherway*, Del.Fam.Ct., No. 1973-86, Gallagher, J. (December 11, 1987) (ORDER). Daughter, as Husband's executrix, appealed this denial of interim relief which was thereafter consolidated with the appeal from the denial of the divorce.

## II

■ The first issue for our consideration is whether, under Delaware law, a perfected appeal from the denial of a divorce abates with the death of a party, where the property rights of the parties were at issue in the divorce proceeding. This question is one of first impression in this jurisdiction.

As previously noted, Husband died shortly after the appeal from the denial of the divorce and subsequently, upon a sugges-

tion of death upon the record, Daughter, as Executrix of her father's estate, was substituted as the appellant in the consolidated appeals. To complicate the matter further, Wife's counsel withdrew and Wife declined to file a brief in opposition to the appeal. Because of the importance of the questions involved, the Court requested H. Alfred Tarrant, Jr., Esquire, to file a brief as *amicus curiae* in response to Husband's opening brief. The Court expresses its appreciation to Mr. Tarrant and his associate, Thomas D. Shellenberger, Esquire, for their able assistance.

Daughter contends that the Family Court erred, as a matter of law, in ruling that Wife's conduct did not amount to misconduct sufficient to authorize the grant of a divorce under 13 *Del.C.* § 1505(b)(2). This error, the argument runs, may be remedied, notwithstanding the Husband's death during the appeal, by this Court's direction of the entry of a divorce decree in Husband's favor, *nunc pro tunc*. Even if the divorce were deemed correctly denied, Daughter argues that under 13 *Del.C.* § 1517(d)[1] the Family Court is authorized to grant ancillary relief to prevent dissipation of assets and restoration of marital property wrongfully diverted.

To the contrary, the *amicus* asserts that the Family Court's decision denying the divorce is clearly supportable under the applicable standard of review. The *amicus* also argues that, the merits of the divorce decision aside, the death of the Husband has absolutely terminated the marriage, to the preclusion of any further legal effort to achieve that result.

Although no Delaware decision appears to have considered the question of whether the death of a party during an appeal from a judgment granting or denying a divorce serves to abate the proceedings, peripheral concerns have been addressed. In *Donovan v. Donovan*, Del.Super., 77 A. 765 (1910), the petitioner died during the one year waiting period then required after the

---

**1.** 13 *Del.C.* § 1517(d) provides:

Where either party has requested property disposition, alimony or other relief provided for in this title, and a decree of divorce or annulment shall be entered, or if such a de-

cree is refused and, nevertheless the Court deems it appropriate to enter an Order concerning some or all of the relief requested, the Court shall finally determine such request for relief.

entry of a divorce decree *nisi*. The court refused to enter a final divorce decree, ruling that "there is therefore now no Husband or Wife to be divorced" and there is "... no marital relationship existing between the parties[.]" *Id.* at 766. More recently, this Court reversed the action of a Family Court judge who entered a divorce decree in an uncontested proceeding, upon the recommendation of a Family Court master, following the required fifteen day waiting period, but after the respondent had died. In vacating the divorce decree, as a nullity, this Court noted that "[t]he death of a party makes the entry of a divorce decree impossible." *Connelly v. Connelly,* 505 *A.*2d 452 Del.Supr., (1985) (ORDER).

■ The abatement rulings in both *Donovan* and *Connelly* were directed to situations in which the death of a party occurred prior to the entry of a judgment of divorce at the trial level. These decisions are consonant with the principle that a cause of action for divorce is purely personal and upon the death of either spouse does not survive for the benefit of a third party. 24 Am.Jur.2d *Divorce and Separation* § 176 at 177 (1983). Our present inquiry, however, focuses on the effect of death upon a judgment in a divorce proceeding which has become final for appeal purposes. The continued viability of the appeal may, in turn, depend upon whether the judgment subject to appeal is one granting or denying a decree of divorce.

The general rule, applied in cases involving an appeal of a final divorce decree, is that the action abates unless property rights are involved. *See Stoup v. Stoup,* Ind.App., 109 Ind.App. 618, 35 N.E.2d 112, 113 (1941) (right of appeal from divorce decree involving distribution of property not destroyed upon death of a party); *Graham v. Graham,* Iowa Supr., 227 Iowa 223, 288 N.W. 78, 80 (1939) (appeal of decree of divorce involving property rights not a bar to retrial of divorce issues upon appeal after death of a party); *Workman v. Peterson,* Mich.Supr., 327 Mich. 456, 42 N.W. 2d 245, 246 (1950) (litigation between parties to divorce involving property rights survives death of one of the parties).

The rationale supporting the continued viability of an appeal from the *grant* of a divorce, despite the death of a party, is that the termination of the marital relationship may significantly modify property interests. Such property interests, for the benefit of third parties, may arise directly through express provisions for property awards incident to a divorce decree or impliedly through the expectation of inheritance. The property interests continue to be at issue despite the mootness of the marital relationship and, therefore, the appellate court is required to review the divorce decree itself to determine if error was committed which would have consequences on the affected property interests. *Hazen v. Hazen,* N.H.Supr., 122 N.H. 836, 451 A.2d 398 (1982); *Price v. Price,* Fla. Supr., 114 Fla. 233, 153 So. 904 (1934).

There is scant authority on the question of whether an appeal from the *denial* of a divorce survives the death of a party. In *Elmore v. Elmore,* N.C.App., 67 N.C.App. 661, 313 S.E.2d 904 (1984), it was ruled that the divorce action abated by reason of the death of the appellant during the pendency of the appeal because the plaintiff-appellant had not sought an adjudication of property rights incident to the divorce action. *Id.* 313 S.E.2d at 908, 909. The only property rights affected by the denial of the divorce are those incidental to the marital status. As to those interests, the court reasoned that they are as "unalterable" as the marital status, now foreclosed from legal change by reason of death. *Id.* at 909.

Conversely, it can be argued, of course, that the denial of a divorce, to the extent that it preserves a legal relationship, also affects rights of intestacy and statutory spousal entitlement. Therefore, an appeal from the denial of a divorce may not always abate because of the death of a party during the appeal. In fact, Daughter in this case argues that the death of Husband during the pendency of this appeal neither abates the proceedings nor forecloses this

Court from reversing the Family Court's denial of his divorce petition.

Daughter's argument is based upon the decision in *Hall v. Hall,* Pa.Super., 333 Pa.Super. 483, 482 A.2d 974 (1984). In *Hall,* the appellate court considered the viability of an appeal from the granting of a divorce in view of the death of the petitioner-husband during the pendency of the appeal. *Hall* recognized the general rule that divorce proceedings pending at the death of either party are abated and the personal representative of the deceased cannot be substituted. However, *Hall* also noted the exception to that general rule "which permits preservation of the action for purposes of appellate review, so long as the appeal has been perfected prior to death." *Id.* 482 *A.*2d at 979.

■ Daughter contends that a review of the record in this case compels the conclusion that the Family Court erred as a matter of law in denying Husband's divorce petition. Upon review of the record, it is argued, this Court has the authority to reverse the decision of the Family Court and to direct the entry of a divorce decree *nunc pro tunc.*[2] In this case, we need not decide our authority to reverse a decision of the Family Court *denying* a divorce decree *and* to direct that a divorce decree be entered, as a matter of law, following the death of one of the parties on appeal. We find that, although an error of law was committed which mandates a reversal, the evidential record does not support the direction of a remand for further action by the Family Court.

■ This appeal was taken from the denial of Husband's second divorce petition which sought a divorce on the grounds of both incompatibility and Wife's misconduct. With respect to the allegation of misconduct, the Family Court found that "even if the conduct of Wife in taking possession of Husband's estate is reprehensible, nonetheless such conduct does not rise to misconduct as defined by the statute." Under Delaware law misconduct is statutorily defined and is limited to a specific list of activities. 13 *Del.C.* § 1503(5). The Family Court concluded that Wife's alleged conduct, if true, was not misconduct within the terms of the statute. We do not find this construction of the misconduct statute erroneous, as a matter of law.

However, in considering Husband's claim of incompatibility, the Family Court was aware that this ground had been the only basis asserted in Husband's first divorce petition. The trial judge was also cognizant that a subsequent divorce petition may be granted only if it "involves factual or legal premises not directly or by necessary implication decided by the decree on the former petition." 13 *Del.C.* § 1518(g). In evaluating the evidence of incompatibility the Family Court adopted a narrow view of its authority in light of the statute and the decision of this Court in *Frank G.W. v. Carol M.W.,* Del.Supr., 457 A.2d 715 (1983). The Family Court thus concluded that Wife's alleged financial misconduct was implicitly a part of the evidence presented in the first divorce proceeding and controlled by the prior decision, by another judge, denying a divorce on the ground of incompatibility.

■ We find that although Wife's alleged misconduct was mentioned in the first divorce proceeding, it was "not directly or by necessary implication decided by the decree on the former petition."[3] 13

2. The authority of a court to enter a judgment *nunc pro tunc* is limited to corrections of clerical errors or ministerial defects to the end that the original intention of the Court will be implemented. 24 Am.Jur.2d *Divorce and Separation* § 425, at 469–471 (1983). *See also Vioglavich v. Vioglavich,* Mich.App., 113 Mich.App. 376, 317 N.W.2d 633, 635–38 (1982), *Pratt v. Pratt,* Wash. Supr., 99 Wash.2d 905, 665 P.2d 400, 401–02 (1983).

3. The basis for the allegation of incompatibility was summarized in the Husband's testimony at the first divorce proceeding as follows:

Mr. Barros: So, just to summarize, my understanding is [sic] why you feel that you want to get a divorce is because of that one time with a lover, which you mentioned, because she was not a companion with you, because she never did the the wash, and she would go away everyday.

Mr. Sherway: Yes, sir.

Mr. Barros: Those are the reasons. Is that it?

*Del.C.* § 1518(g). Assuming arguendo that Wife's conduct in retitling Husband's assets both before and after the first petition was reprehensible, but not a sufficient basis, *per se*, for granting a divorce on the ground of misconduct, it should have properly been considered in the second divorce petition with respect to the allegation of incompatibility. *J.A.D. v. P.L.D.*, Del. Supr., 259 A.2d 381, 384 (1969). The Family Court's failure to evaluate that conduct in the context of the renewed allegation of incompatibility in the second divorce petition was reversible error. Since the Family Court did not consider this evidence in the first instance, its denial of the divorce is thus not legally supportable.

■ Having reached this conclusion, the question remains of what, if any, relief can be granted by this Court. Although it is possible to reverse the decision of the Family Court denying the second divorce petition on the ground of incompatibility, it is not possible to remand this matter to the Family Court for a new trial. Upon remand, the Family Court would be faced with the "impermissible eventuality of having to grant a divorce to a deceased or substituted party." *Hall v. Hall*, 482 A.2d at 979.[4] In view of the absence of a subsisting legal marriage to which a remanded proceeding in the Family Court could be directed, we must conclude that although the Family Court committed reversible error, in denying the divorce on the ground of incompatibility, any further proceedings on the second divorce petition in the Family Court have also abated by reason of the death of the Husband.

■ Daughter also contends that the ancillary claims for property distribution are deemed separate causes of action which survive notwithstanding the death of a party, as the Family Court ruled in *Husband, C.E.W. v. Wife, H.L.W.*, Del.Fam.Ct. 410 A.2d 1024 (1979). Here, again, the court was requested to continue its jurisdiction, after the granting of a final decree of divorce, in order to protect property interests which were created ancillary to the divorce. We are in agreement with that ruling to the extent that it holds that the Family Court does not lose jurisdiction to decide pending ancillary matters by reason of the death of a party after the issuance of a divorce decree. *Id.* at 1026.

### III

Daughter maintains that, notwithstanding the abatement of the divorce action by reason of death, the Family Court is not denied the power to entertain claims for ancillary relief. She argues that even where a divorce is refused, both 13 *Del.C.* § 1517(d) and § 1518(c)[5] specifically authorize the Family Court to grant ancillary relief incident to the denial of a divorce.

As earlier noted, following the August 21, 1987, denial of the divorce in the Family Court, but before filing his notice of appeal in this Court, Husband had requested the Family Court to enjoin Wife from withdrawing the proceeds of any bank accounts, formerly held jointly by the parties. Following Husband's death Daughter sought to be substituted as a party for the purpose of pursuing the pending claims for ancillary relief under 13 *Del.C.* § 1517(d) and § 1518(c), notwithstanding the denial of the divorce. The Family Court declined

---

Mr. Sherway: That's it.
Mr. Barros: No other reasons? Your answer is no?
Mr. Sherway: No.

**4.** In *Hall,* in ruling that the trial court had improperly bifurcated ancillary property claims, the appellate court limited itself to a vacation of the divorce decree, without a remand for further proceedings to permit the trial court to consider "economic claims." *Id.* Even if the economic claims "could somehow be considered," it was ruled that "the court would still be faced with the impermissible eventuality of

having to grant a divorce to a deceased or substituted party." *Id.*

**5.** 13 *Del.C.* § 1518(c) provides:
(c) In the decree granting or denying a petition for divorce or annulment, or by separate order or orders preceding or following such decree, the Court shall dispose of all other prayers for relief, where appropriate under the facts and law; but an application for such relief and a hearing thereon must be presented in the petition or response, or by motion after notice to the other party prior to that entry or denial of such divorce.

to act on these requests, in view of the pendency of the appeal and the risk that its ruling might conflict with the ultimate decision of this Court. The Family Court also "suggested", but did not rule, that it had no authority to make a property allocation after a denial of a divorce. It viewed the language of section 1518(c) as a retention of jurisdiction as to "interim relief only."

Both sections 1517 and 1518 were enacted as part of the Delaware Divorce and Annulment Act.[6] There is no legislative history or explanation which provides insight into the type of relief which the Family Court is authorized to grant if "a decree is refused." There appears to be no counterpart provision in the divorce statutes in other states. Neither section requires the grant of ancillary relief where a divorce decree is denied, they merely provide that the requests for ancillary relief be "finally determine[d]", 13 *Del.C.* § 1517(d), "where appropriate under the facts and law". 13 *Del.C.* § 1518(c).

■■■ Of the possible relief which a party to a divorce action may seek incident to a divorce proceeding, certain types would appear to be rendered moot by the denial of a divorce. A request for alimony, as distinct from support, is predicated on the termination of the marriage and is mooted by the denial of a divorce. Similarly, a court-ordered division of marital property can take place only in the context of the granting of a divorce, not its denial. In Delaware, joint ownership of property between spouses, with the concomitant right of survivorship, is an attribute of the marital relationship which continues as long as that status is intact, and is not subject to partition. *See Hurd v. Hughes*, Del.Ch., 109 A. 418, 419 (1920). Conceivably, an award of counsel fees could be granted regardless of the outcome of the divorce proceeding. Only in this respect can we accord any jurisdictional significance to the decree refusal provision of sections 1517(d) and 1518(c). As the unsuccessful petitioner in a divorce proceeding the Husband's

claim for counsel fees does not appear compelling, but since the Family Court did not reach the merits of any of the Husband's claims for ancillary relief, including counsel fees, we do not address the counsel fee claim itself. *Supr.Ct.R. 8.* We hold, however, that the Family Court does have authority under sections 1517(d) and 1518(c) to make an award of counsel fees in connection with the denial of a divorce. The matter may be reasserted in the Family Court on Husband's behalf in connection with the remand which will be hereafter directed.

## IV

■■■ Although our ruling that the Family Court lacks authority to grant ancillary relief forecloses further proceedings in that forum, except for a claim for an award of counsel fees incident to the denial of a divorce, it does not follow that Husband's claim of undue influence and overreaching against Wife is without a remedy pursuable by his estate. We conclude that relief may be secured within the traditional jurisdiction of a court of equity.

■■■ It has long been a principle of equity jurisprudence that the confidential relationship between husband and wife may implicate the standards of a fiduciary. *Peyton v. William C. Peyton Corp.*, Del. Supr., 7 A.2d 737 (1939). This is particularly so where it appears that one of the spouses is in a position of superiority and obtains a benefit at the expense of the inferior spouse through the exercise of that dominance. *Id.* at 747. This dominance may be exercised by a wife as well as by a husband. *See Adams v. Jankouskas*, Del. Supr., 452 A.2d 148 (1982). Moreover, where a wife, without the consent of her husband, converts a property interest which was formerly held by the entireties, to her individual use, a constructive trust may be imposed, or a reconveyance required, to restore the property to joint ownership. *Hoyle v. Hoyle*, Del.Ch., 66 A.2d 130 (1949); *Darlak v. Darlak*, Del.Ch., 99

---

6. The Delaware Divorce and Annulment Act was enacted in 1974 as House Bill No. 610. (59 Del.Laws, c. 350).

A.2d 763 (1953). We believe these standards have obvious application here.[7]

Although the Family Court has succeeded to certain of the equitable powers of the Court of Chancery, that authority may be exercised only in aid of, or to implement, its statutory authority. *Child Support Enforcement v. Smallwood*, Del. Supr., 526 A.2d 1353, 1356 (1987). Thus, the Family Court's equitable authority to allocate the parties' property interests, including marital property wrongfully diverted by a spouse, is limited to the grant of ancillary relief incident to a divorce proceeding. Upon the abatement of the latter, as here, the Family Court lacks a statutory predicate upon which to fashion further relief. In such situations the power the Court of Chancery historically has possessed fills the legal void. Here, Husband's claim for dissipation of marital assets, stripped of its divorce component, remains a viable claim within the jurisdiction of the Court of Chancery. Transfer of that claim to a court with authority to hear it, is clearly contemplated by the provisions of 10 *Del.C.* § 1901, a remedial statute to be "liberally construed ... in the interests of justice." 10 *Del.C.* § 1901.

Finally, we note that Husband's death following the denial of the divorce does not serve to abate his equitable cause of action asserted before his death. By virtue of 10 *Del.C.* § 3701 [8] this claim inures to the benefit of his estate which may seek its transfer to the Court of Chancery.

One additional matter requires determination. While this appeal was pending, the Wife contracted to sell the marital home formerly held by the Husband and Wife as tenants by the entireties. The Daughter requested that this Court prevent that sale, alleging that the proceeds of the sale represented the sole remaining assets of the parties' former marital property, out of which the Husband's dissipation claim could be satisfied. This Court subsequently entered an order of May 12, 1988, permitting the sale, but requiring that the net proceeds be placed in escrow in an interest bearing account pending the resolution of this appeal. In view of our finding that Husband's equitable claim continues to be viable, we will require the continuance of the escrow arrangement pending the opportunity for Daughter to effect a transfer of the diversion claims to the Court of Chancery. Upon transfer, the Court of Chancery may enter such orders as are necessary, in its discretion, to continue the escrow arrangement or dispense with it.

## V

In sum, we hold that the divorce action, to the extent that it seeks further relief in the Family Court from denial of the second divorce petition, is deemed to have abated by reason of the death of a party. We further hold that Husband's claims for ancillary relief, not decided by the Family Court, are also not subject to relief in the Family Court, but such claims may be pursued by his estate through transfer to the Court of Chancery under 10 *Del.C.* § 1901. The Family Court may, however, entertain the claim for counsel fees under the provisions of 13 *Del.C.* §§ 1517(d) and 1518(c). The escrow account required by this Court's order of May 12, 1988, shall expire thirty days after the issuance of the mandate in this case, unless further extended by the Court of Chancery.

---

7. Our statement of the standards which govern a claim by a spouse for recovery of wrongfully diverted marital assets is not to be construed as an indication that relief should be granted by the Court of Chancery. The Family Court did not expressly consider the merits of this claim, nor have we.

8. **§ 3701. Causes of action generally.**
   All causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against whom the cause of action accrued. Accordingly, all actions, so surviving, may be instituted or prosecuted by or against the executors or administrators of the person to or against whom the cause of action accrued. This section shall not affect the survivorship among the original parties to a joint cause of action.
   *Id.*