# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LAWRENCE E. MERGENTHALER,   )
a resident of the State of Delaware,   )
                                   )
       Plaintiff,   )
                                   )
       v.   )   C.A. No. 09C-09-203 AML
                                   )
TRIUMPH MORTGAGE CORP.,   )
a Delaware Corporation,   )
                                   )
       Defendant.   )

Submitted: September 7, 2018
Decided: November 26, 2018

## OPINION

John A. Sergovic, Jr., Esquire, SERGOVIC & CARMEAN, P.A., Georgetown, DE; *Attorney for Plaintiff*.

Richard L. Abbott, Esquire, ABBOTT LAW FIRM, Wilmington, Delaware; *Attorney for Defendant*.

**LeGROW, J.**

The judgment creditor in this case obtained a judgment against the debtor in 2010. The creditor executed on the judgment, but it remains unsatisfied. More than five years after the entry of judgment, the creditor filed a writ of attachment to garnish stock held in an account and pledged to the debtor. The debtor moved to quash the writ as invalid because it was issued more than five years after the judgment's entry and without the judgment first being renewed. After two years of motion practice, hearings, a stay pending the Supreme Court's resolution of a legal question in a separate case, and supplemental motion practice, the parties' arguments with respect to the validity of the writ of attachment finally are before the Court for resolution.

The fundamental issues in this case are whether the judgment creditor was required to renew the judgment after five years and, if so, whether the Court should grant the creditor's request to renew the judgment retroactively because the creditor's failure to seek renewal was based on the Court's practice of not requiring such motions until ten years after the entry of judgment. Based on the Supreme Court's recent ruling in the unrelated case, it is settled law that the creditor was required to renew the judgment after five years. But, because the creditor's decision not to renew was based on this Court's practice of not requiring such motions until ten years after a judgment's entry, and that failure to renew was not attributable to the creditor's negligence or carelessness, I grant the creditor's

motion to renew the judgment retroactively. The challenged writ of attachment therefore is valid, and the motion to quash is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the facts of this case. The plaintiff, Lawrence E. Mergenthaler, obtained a judgment in this Court against the defendant, Triumph Mortgage Company ("Triumph"), on January 15, 2010. Mergenthaler transferred the judgment to Kent and Sussex counties by means of a Testatum *Fieri Facias* and later filed several writs of attachment in an effort to collect the judgment.

The issues presently before this Court arose when Mergenthaler filed a Writ of Attachment *Fieri Facias* (the "Challenged Writ") addressed to the account manager of a Merrill Lynch account (the "Account"). The Account's owner previously pledged her stock to Triumph to secure a debt on which she later defaulted, and Mergenthaler sought to garnish the funds owed to Triumph.[1] After the stock was liquidated, the Account held $131,107.30, less than the amount necessary to satisfy Triumph's debt to Mergenthaler. The Challenged Writ was filed on November 29, 2016, more than five years after it was entered. Triumph later filed two motions to quash the Challenged Writ. In the second such motion, Triumph alleged the Challenged Writ was invalid because it was issued more than

---

[1] *See* D.I. 91.

2

five years after the judgment was entered and without Mergenthaler taking any action to "refresh" the judgment (the "Second Motion to Quash").

The parties agreed to deposit the Account proceeds with the Prothonotary while the Court determined which party, Mergenthaler or Triumph, was entitled to receive the funds.[2] The parties then litigated the motions to quash. The Court referred the motions to a Commissioner, who issued a report (the "Commissioner's Report") recommending that the Court deny both motions to quash. In his Report, the Commissioner concluded that although 10 *Del. C.* § 5072 requires a judgment creditor to refresh a judgment every five years, that statute was superseded by Superior Court Civil Rule 69(a), which requires a judgment creditor to refresh a judgment only every ten years.[3] The Commissioner reasoned that the time period for refreshing a judgment was a procedural rule, rather than a substantive right, and 10 *Del. C.* § 561 therefore required the Court to resolve the inconsistency between Rule 69 and Section 5072 in favor of the rule.[4] Triumph appealed the Commissioner's recommendation that the Court deny the Second Motion to Quash.[5]

---

[2] D.I. 131.

[3] *Mergenthaler v. Triumph Mortg. Corp.*, 2017 WL 1550252, at *5 (Del. Super. Apr. 27, 2017) (hereinafter *Commissioner's Report*).

[4] *Id*. at *6.

[5] *See* D.I. 135. Because Triumph did not appeal the *Commissioner's Report* recommending that the Court deny the first Motion to Quash, Triumph effectively has abandoned that motion. *See* Super. Ct. Civil R. 132(a)(4)(iv).

At the time the Commissioner issued his Report, the precise issue raised by the parties was a matter of first impression in Delaware. Shortly after the parties finished briefing Triumph's appeal, however, another judge of this Court issued a letter (the "*Schatzman* Letter") to a member of the Delaware bar explaining why the Superior Court Prothonotary's Office in Sussex County rejected praecipes that sought the issuance of execution writs more than five years after the judgments in those cases were entered.[6] As explained in more detail below, in rejecting the praecipes in those cases, the *Schatzman* Court disagreed with the reasoning in the Report and concluded the writs could not be issued until the judgments were refreshed. In so holding, the *Schatzman* Court concluded that the period to refresh judgments was a substantive right, not a procedural rule, and therefore Rule 69 did not supersede Section 5072. While Triumph's appeal of the Commissioner's Report was pending before this Court, the judgment creditor in *Schatzman* appealed that decision to the Delaware Supreme Court. This Court therefore stayed decision on Triumph's appeal pending resolution of the *Schatzman* appeal.

On January 23, 2018, the Delaware Supreme Court affirmed the Superior Court's judgment in *Schatzman*.[7] Under Supreme Court Rule 8, the Court expressly declined to address the judgment creditor's argument that the ruling left

---

[6] *Delaware Acceptance Corp. v. Schatzman*, S10J-03-032 and *Evans v. G-33, Inc.*, SS08J-03-068 (Del. Super. June 1, 2017) (LETTER ORDER) (hereinafter "*Schatzman* Letter").
[7] 2018 WL 526596 (Del. Jan. 23, 2018).

4

unresolved the apparent inconsistencies in the Superior Court's interpretation of when a judgment must be refreshed.[8]  The judgment creditor filed a motion to reargue the appeal, which the Supreme Court denied.[9]  Accordingly, under the Supreme Court's ruling in *Schatzman*, when a civil judgment is entered in the Superior Court and remains unsatisfied after five years, the judgment creditor must file a motion to renew the judgment before continuing to execute on the judgment.

While the *Schatzman* Motion for Reargument was pending before the Supreme Court, Mergenthaler filed a Motion to Renew Execution on Judgment (the "Motion to Renew"), and shortly thereafter Triumph filed a Motion for Withdrawal of Funds on Deposit (the "Motion for Withdrawal").  The parties briefed and argued those motions and filed supplemental submissions responding to questions the Court raised during oral argument.

Mergenthaler's Motion to Renew asks the Court to "renew execution against [Triumph] *nunc pro tunc* to the date of January 14, 2015."[10]  Mergenthaler first asserts, however, that renewal is not necessary because Section 5072 does not apply to this case.  If the Court disagrees, however, Mergenthaler contends the Court should renew the judgment *nunc pro tunc* because Mergenthaler diligently has pursued execution and did not renew the judgment after five years based on the

---

[8] *Id.*
[9] *Delaware Acceptance Corp. v. Schatzman*, No. 245, 2017 (Del. May 2, 2018) (ORDER).
[10] Mot. to Renew Execution on J. at 1.

Superior Court's practice of not requiring renewal until ten years after a judgment's entry. Triumph argues *Schatzman* unequivocally requires renewal after five years, renewal *nunc pro tunc* is not warranted in this case, and in any event retroactive renewal would not revive the Challenged Writ because that writ was "void *ab initio* and cannot be revived."[11]

In the Motion for Withdrawal, Triumph argues the *Schatzman* decision is dispositive, and the Court therefore should grant the Second Motion to Quash and enter an order authorizing Triumph to withdraw the funds on deposit with the Court. In response to the Motion for Withdrawal, Mergenthaler again asserts that the five-year renewal under 10 *Del. C.* § 5072 does not apply to this case.

## ANALYSIS

The parties have filed numerous motions with the Court, to say nothing of the serial responses, replies, supplemental responses, and positions advanced at oral argument. Presently pending before the Court are Triumph's Second Motion to Quash, Mergenthaler's Motion to Renew, and Triumph's Motion for Withdrawal. Those motions collectively present two fundamental issues: (1) does the five-year renewal required by 10 *Del. C.* § 5072 apply to this case, and (2) if so, should the Court renew the judgment *nunc pro tunc*.

---

[11] Opp'n to Mot. to Renew Execution on J. ¶ 10.

**I.** **Under Section 5072 and Delaware Supreme Court precedent, Mergenthaler was required to renew the judgment after five years.**

This decision explores the somewhat arcane, but undeniably important procedures by which parties execute upon judgments. Given the complexity of those procedures and the interplay of the various statutes and court rules, it first is necessary to set forth the relevant statutes, rules, and precedent.

**A. The governing statutes and rules**

There are a variety of means by which a judgment creditor may execute on a judgment in an attempt to satisfy a debt. Pertinent to this case, 10 *Del. C.* § 5072 governs execution on judgments in civil actions. That statute provides:

§ 5072. Execution on judgments in civil actions.

(a) An execution may be issued upon a judgment in a civil action at any time within 5 years from the time when such judgment was entered or rendered, or from the time when such judgment became due; or to collect any instalment of a judgment within 5 years from the time when such instalment fell due.

This section shall only apply to cases when no execution has been previously issued to collect such judgment or instalment, and to cases where 1 or more have been issued for such purpose, and it appears by the return of the officer that such judgment or instalment, as the case may be, has not been paid or satisfied. As to all other cases the law shall remain unaffected.

(b) No judgment shall be deemed to be paid or satisfied, in whole or in part, by a levy on execution process, unless it appears otherwise than by the fact of such levy that such payment or satisfaction has been made.

7

Section 5072 was adopted in 1857 and has not been amended substantially since that time.[12]  The Delaware Supreme Court has acknowledged ambiguity in Section 5072 and therefore has interpreted it by relying on the statute's legislative history and the explanation of the statute and common law provided in Victor B. Woolley's well-recognized treatise, "Practice in Civil Actions and Proceedings in the Law Courts in the State of Delaware" (hereinafter, "Woolley's").[13]

As interpreted by the Delaware Supreme Court and this Court, Section 5072 extended the period in which a creditor could execute on a judgment.[14]  Under the common law, that execution period was one year and one day; under Section 5072, that execution period is five years.  For a period of time, New Castle and Sussex counties extended that common law year-and-a-day period to twenty years through a writ of *vices comes*, which Woolley's explains was a fictitious writ that "enable[d] subsequent executions without *sci. fa.* at any time during twenty years."[15]  The writ of *vices comes* was abolished, however, by Rule 69(a), and thereafter the year-and-a-day period was the common law practice in all counties.

The time period in Section 5072 does not, however, bar execution altogether after five years.  Rather, in Delaware, there is no statute of limitations on judgments, and the Delaware Supreme Court has held that Section 5072 and

---

[12] *Knott v. LVNV Funding, LLC*, 95 A.3d 13, 15-17 (Del. 2014).
[13] *Id.* at 16.
[14] *Id.* at 16-18; *Platinum Fin. Servs. Corp. v. Colbert*, 2013 WL 6917144, at *2 (Del. Super. Nov. 7, 2013).
[15] Woolley § 957.

8

similar statutes simply require a judgment creditor to move to refresh a judgment after the specified time period before further executing on the judgment.[16]

Mergenthaler maintains the five-year period in Section 5072 was expanded to ten years by Rule 69(a), which provides:

> Rule 69. Execution.
>
> (a) In general. Except as herein provided the procedure on execution shall be as heretofore. An execution may be issued upon a judgment in a civil action at any time after such judgment was entered or rendered during the period that such judgment would constitute a lien upon the real property of the judgment debtor. The fictitious writ of vice comes or v.c. is hereby abolished.

Rule 69(a)'s provision that a judgment may be executed upon at any time "during the period that such judgment would constitute a lien upon real property of the judgment debtor" refers to 10 *Del. C.* § 4711, which states that a judgment shall continue as a lien on real property for ten years before it must be renewed.[17]

---

[16] *Knott*, 95 A.3d at 18-19; *Gamles Corp. v. Gibson*, 939 A.2d 1269, 1271-72 (Del. 2007) (interpreting 10 *Del. C.* § 4711 as creating a ten-year period before a judgment creditor must refresh a lien on real estate); *Gyayaquil & Quito Railway Co.*, 50 Del. (11 Terry) 424, 433 (Del. 1957) (holding there is no statute of limitations on judgments in Delaware). The procedure for refreshing a judgment may differ depending on the type of judgment at issue. *See also Delmarva Auto Fin. Servs. v. White*, 100 A.3d 1059 (Del. Super. Aug. 15, 2014).

[17] 10 *Del. C.* § 4711 ("No judgment for the recovery of money entered or recorded in the Superior Court . . . shall continue a lien upon real estate for a longer term than 10 years next following the day of entry or recording of such judgment . . . unless, within the term of 10 years, the lien of such judgment is renewed . . . ."); *see also Gamles*, 939 A.2d at 1272 ("Section 4711 provides only that a *judgment lien upon real estate* will expire unless it is renewed within 10 years after its entry.").

Throughout these proceedings, Mergenthaler argued the inconsistency between Section 5072 and Rule 69(a) must be resolved in favor of the rule. Mergenthaler relied on 10 *Del. C.* § 561, which states:

§ 561. Rules of Court in civil actions.

(a) The Judges of the Superior Court, or a majority of them, may, from time to time, adopt and promulgate general rules which prescribe, establish and regulate the form, issuance and return of process and writs, the form and system of pleading, and all other practice and procedure with respect to the commencement, trial, hearing and determination of civil actions in the Superior Court.

(b) Such rules shall be for the purpose of securing the just and, so far as possible, the speedy and inexpensive determination of every such action. The rules shall not abridge, enlarge or modify any substantive right of any party, and they shall preserve the right of trial by jury as at common law and as declared by the statutes and Constitution of this State.

(c) The rules so adopted and promulgated, and all amendments thereof, shall, after they have taken effect, supersede all statutory provisions in conflict or inconsistent therewith.

(d) Any inconsistency or conflict between any rule promulgated under the authority of this section or prior law, and any of the provisions of this Code or other statute of this State dealing with practice or procedure in the Superior Court, shall be resolved in favor of such rule of court. Nothing in this Code, anything therein to the contrary notwithstanding, shall in any way limit, supersede or repeal any rule heretofore promulgated governing practice or procedure in civil actions in the Superior Court.

(e) As used in this section, the phrase "civil actions in the Superior Court" includes proceedings of every kind or character within the jurisdiction of that Court except criminal proceedings.

To summarize, Section 561 permits the Superior Court to adopt rules governing "practice or procedure" for civil actions in the Court. In the event there is an inconsistency or conflict between any rule and a law adopted before the rule, the rule supersedes the statute if it relates to "practice or procedure in the Superior Court" and does not "abridge, enlarge or modify any substantive right of any party."[18]

In *Schatzman*, the Delaware Supreme Court affirmed this Court's holding that the time period for renewing judgments is a substantive right, rather than a procedural rule, and the ten-year period referenced in Rule 69 therefore does not preempt the five-year period in Section 5072. Mergenthaler, however, argues Section 5072 does not apply to the Challenged Writ because this case does not fall within the category of cases to which that section applies.

In support of this argument, Mergenthaler contends a judgment creditor's execution within five years of the entry of judgment "without a return by the Sheriff[] in some way confirming that the judgment remains open, allows a judgment creditor to execute after five [] years from the date of the judgment under the provision of the second paragraph of [Section 5072(a)]."[19] Mergenthaler

---

[18] 10 *Del. C.* § 561(b)-(d). *See Williams v. Singleton*, 52 Del. (2 Storey) 488 (Del. 1960); *Ellison v. City of Wilmington*, 301 A.2d 303 (Del. Super. 1972).

[19] Mot. to Renew Execution on J. ¶ 20. Mergenthaler's argument on this point is, at best, muddled. Despite reading and rereading Mergenthaler's briefs and asking extensive questions at oral argument, the Court has not been able clearly to understand Mergenthaler's argument, which

11

argues Woolley's analysis of Section 5072 "is of no moment" in this case because Woolley interpreted an earlier version of Section 5072.[20] In that previous version of the statute, the last sentence of the second paragraph of Section 5072(a) read "[a]s to all *such* cases the law shall remain as at present," rather than the current statutory language, added in the 1915 codification, which states that "as to all *other* cases the law shall remain as at present."[21] Mergenthaler argues the 1915 amendment to Section 5072 "is a clear expression of legislative intent and an apparent rejection of the result Woolley opined to be the legislative intent of a reversion to the year and a day common law rule."[22] In other words, Mergenthaler contends the "'As to all other cases' [language] can only be interpreted to confirm a legislative intent to exclude the requirement to [renew a judgment] if creditors executed within five years . . . of a judgment's entry."[23]

In this case, Mergenthaler argues that because he executed on the judgment within five years of its entry, and because there is no sheriff's return on the docket indicating the judgment remains unsatisfied, "Mergenthaler thus meets both exceptions to the [sic] only allowing execution within the first five years of entry"

---

makes it difficult to compose a coherent summary of that argument. I therefore have resorted to quoting the argument so as to not misstate it.

[20] Reply to Opp'n to Mot. to Renew Execution on J. at 4-5.

[21] *Id.* at 5-6.

[22] *Id.* at 6.

[23] *Id.*

and Section 5072 does not apply.[24] Mergenthaler therefore contends he can execute for the life of the judgment, *i.e.*, twenty years, without having to renew the judgment with the Court.

Mergenthaler's proffered interpretation of Section 5072 and the record in this case cannot be reconciled with the statutory language or the cases interpreting it. First, Mergenthaler argues Section 5072 does not apply to this case because one or more executions have been issued to collect on the judgment and there is no "return of the officer" indicating the judgment has not been satisfied. Put differently, Mergenthaler argues that because he has executed on the judgment and nothing on the docket indicates the judgment remains unpaid, he may execute for twenty years without filing a motion to renew the judgment.

Accepting this argument would require the Court to ignore modern execution practice and Rule 69(a). First, as even Mergenthaler concedes, the current language of Section 5072 regarding a "return" is not consistent with "modern garnishment practice."[25] As Mergenthaler puts it, the reference to a "return" is a reference to a largely bygone era in which the sheriff would "sell property after execution and levy thereon and enter a return on such things as the sale of cows and other chattels."[26] Now, Mergenthaler acknowledges, when the

---

[24] *Id.* at 8.
[25] Mot. to Renew Execution on J. ¶ 19.
[26] *Id.*

sheriff executes a writ of garnishment on a judgment debtor, the judgment creditor typically receives the funds without the sheriff making any return on the writ.[27] Given the parties' agreement that a return is not filed in most modern cases, an interpretation of Section 5072 that excludes from the statute all cases in which a return is not filed would, effectively, create an exception that completely swallows the rule and thereby nullifies the statute.

Rather than adopt such an absurd interpretation, this Court must accord Section 5072's somewhat antiquated and admittedly ambiguous language the meaning the General Assembly presumably intended.[28] As Woolley's explains and the Delaware Supreme Court has held, the General Assembly adopted Section 5072 to "broaden the use of judgments and executions for commercial purposes."[29] According to Woolley's, the "return of the officer" language refers to cases in which one or more executions have been issued "without producing payment." Or, in more modern terms, Section 5072 applies to cases where execution has been issued within five years, but the judgment remains unsatisfied. This interpretation is consistent with execution process as it existed at the time Section 5072 was adopted and accords the statute a meaning that is logical and consistent with

---

[27] *Id.*
[28] *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932-35 (Del. 2007) ("An ambiguous statute should be construed 'in a way that will promote its apparent purpose and harmonize it with other statutes' within the statutory scheme.") (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)).
[29] *Knott*, 95 A.3d at 17.

modern execution process.  Rather than placing undue emphasis on the existence of a "return" of the executing officer, the interpretation is consistent with the result the legislature presumably intended: to apply the longer five-year execution period to cases in which the judgment was not satisfied after a year and a day.  Because both parties agree Mergenthaler's judgment remains unsatisfied, Section 5072's five-year period applies to this case.

Second, even if Mergenthaler is correct and Section 5072 does not apply to this case, his contention that he therefore may execute for twenty years is a logical leap too far and inconsistent with Rule 69(a).  That is, Section 5072 applies to the specified subset of cases and further states that "as to all other cases, the law shall remain as at present."  The Delaware courts consistently have interpreted that language as indicating that the common law rule continues to apply to cases not falling within Section 5072's scope.  The common law rule was not, as Mergenthaler vaguely argues, that a judgment creditor could execute for the twenty-year life of a judgment without renewal.  Rather, as previously explained, under the common law, a judgment creditor only could execute for a year and a day before seeking to refresh a judgment.  The twenty-year execution period afforded in some counties by use of a writ of *vices comes* has no application in this case because that writ was abolished and no such writ was issued in this case.  Accordingly, even if Section 5072 did not apply to this case, the Challenged Writ

15

would be untimely because it was not issued within a year and a day of the judgment's entry. In my view, however, Section 5072 applies and Mergenthaler was required to refresh the judgment after five years.

## II. The judgment should be renewed retroactively to correct the Court's ministerial error.

Mergenthaler argues that even if Section 5072 applies to this case, the Court should renew the judgment *nunc pro tunc* to January 14, 2015. Mergenthaler argues that renewing the judgment *nunc pro tunc* would correct a ministerial or clerical error by the Court because his failure to renew within five years was based on the Superior Court's pre-*Schatzman* practice of not requiring renewal of a judgment until ten years had passed. Triumph argues the Court cannot and should not renew the judgment retroactively and, in any event, to do so would not revive the Challenged Writ.

### A. The practice for refreshing judgments in New Castle County before the *Schatzman* decision

The *Schatzman* decision, juxtaposed with the Commissioner's Report, revealed an inconsistency within the Superior Court regarding the Court's interpretation of the time period in which writs of execution could be issued without a judgment first being refreshed. Before *Schatzman*, it was the Court's practice to issue execution writs within ten years of a judgment's entry, provided the judgment creditor had executed on the judgment within the five years before a

new writ was filed.[30] Mergenthaler contends he relied on that practice and therefore did not first file a motion to refresh the judgment against Triumph. Consistent with its practice, the New Castle County Prothonotary issued the Challenged Writ without requiring a renewal motion.

The Superior Court's pre-*Schatzman* interpretation of Section 5072, which was the interpretation adopted by the Commissioner in his Report, implicitly was rejected when the Supreme Court affirmed *Schatzman*. Before that time, however, the precise issue raised in *Schatzman* had not been addressed. Although the *Schatzman* Court ultimately concluded that the time period for refreshing a judgment was five years under Section 5072, rather than ten years under Rule 69(a), the Prothonotary's conclusion that the ten-year period was controlling was not an unreasonable interpretation of the statute and rule. That is, as explained in the Commissioner's Report, there is authority to support the conclusion that the period for refreshing a judgment is a procedural rule, thereby allowing Rule 69(a) to supersede Section 5072. That authority, summarized below, is the context

---

[30] Under this interpretation, the execution praecipes in *Schatzman* that related to the Superior Court judgment still would have been rejected because, although the judgment was less than ten years old, no execution process had been issued within five years of the execution praecipes' filing. That was not, however, the reason given by the Superior Court for rejecting the praecipes in that case. *See Schatzman* Letter at 2 ("the Prothonotary's Office rejected the execution praecipe because it had been over 5 years since the judgment was entered."); *id.* at 10 ("if a creditor wants to execute on a Superior Court civil judgment over 5 years after the judgment was entered, then he or she must file a motion to renew pursuant to Rule 64.1.")

underlying Mergenthaler's decision to not move to refresh the judgment and the Court's decision to not require such motions until ten years had passed.[31]

The distinction between a procedural rule and a substantive right is a blurry line in certain cases. Although no Delaware case directly has addressed the distinction between a procedural rule and a substantive right, the United States Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.* is helpful authority.[32] The *Shady Grove* Court examined a federal law that, like Section 561(b), enables federal courts to adopt rules of procedure as long as those rules do not "abridge, enlarge or modify any substantive right."[33] In *Shady Grove*, the Supreme Court concluded that the federal statute required the Court to determine whether a rule "really regulate[s] procedure, – the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them . . . ."[34] The Supreme Court explained that the test "is not whether the rule *affects* a litigant's substantive rights; most procedural rules do."[35] Rather, the inquiry focuses on

---

[31] By outlining this authority, I do not intend to express disagreement with the *Schatzman* decision, which I respect and which is binding precedent. Rather, this context is important to the Court's decision to renew the judgment *nunc pro tunc* because it supports the ultimate conclusion that the practice of issuing writs for the first ten years of a judgment was a ministerial act based on the Court's interpretation of its own rules, rather than carelessness attributable to Mergenthaler.

[32] 559 U.S. 393 (2010).

[33] *Id.* at 407 (addressing 28 U.S.C. § 2072(b)).

[34] *Id.* (quoting *Sibbach v. Wilson & Co. Inc.*, 312 U.S. 1, 14 (1941)).

[35] *Id.*

what the rule regulates. If a rule regulates "'the manner and the means' by which the litigants' rights are 'enforced,'" it is procedural, whereas, if it "alters 'the rules of decision by which the court will adjudicate those rights,'" it is substantive.[36]

The *Shady Grove* test for distinguishing substantive rights and procedural rules appears consistent with the Delaware Supreme Court's application of Section 561. In *Fleming v. Jackson*, the Delaware Supreme Court concluded that the computation of the statute of limitations for a personal injury action was controlled by Superior Court Civil Rule 6(a), which provides that when a weekend or legal holiday is the last day of any period of time prescribed in the rules, the period shall continue until the next day on which the Court is open.[37] The Court in *Fleming* considered the effect of Section 561 and at least implicitly concluded Rule 6(a) supplemented or supplanted the statute of limitations to the extent the last day of the limitations period fell on a weekend or legal holiday.[38] Although that rule affects a litigant's substantive right to pursue litigation altogether, it does not alter the rules of decision by which those rights are adjudicated, and the inconsistency between the rule and the statute therefore was resolved in favor of the rule.

In *Shatzman*, the Superior Court concluded the period after which a judgment must be refreshed was a substantive right because Section 5072 provides

---

[36] *Id.*
[37] 2005 WL 3146828 at *1 (Del. Nov. 23, 2005).
[38] *Id.* at *1-2. The Court's opinion transposed the statutory section number and therefore referred to Section 516 rather than Section 561. The context of the Court's opinion makes clear that the Court was referring to Section 561 and, in any event, there is no 10 *Del. C.* § 516.

"the debtor with the opportunity to object to the delayed collection efforts [and provides] the court the opportunity to decide whether those rights of the debtors preclude an extension of the judgment."[39]   Conversely, the Commissioner concluded the renewal period was a procedural rule, relying in part on a recent federal district court decision that "[t]he requirements for vacating a final judgment are procedural in nature because such requirements merely regulate 'the judicial process for enforcing rights and duties recognized by substantive law . . . .'"[40]  By affirming *Shatzman*, the Delaware Supreme Court implicitly concluded the period for refreshing a judgment was a substantive right, and all judgment creditors now are on notice that judgments must be refreshed after five years.   Before that decision, however, it was reasonable for creditors and their counsel to rely on the Prothonotary's practice in light of the then-unresolved inconsistency between Section 5072 and Rule 69(a).

### B. Renewing the judgment *nunc pro tunc* is appropriate in light of the Court's and Prothonotary's previous interpretation of Delaware law.

Pointing to the Prothonotary's interpretation of Section 5072 at the time the Challenged Writ was issued, Mergenthaler argues the Court should refresh the judgment *nunc pro tunc* to allow the Challenged Writ to be effective as of the time it was issued.  The Court's authority to enter an order *nunc pro tunc*, that is to enter

---

[39] *Schatzman* Letter at 13.

[40] *Aspic Eng'g & Constr. Co. v. ECC CENTCOM Constructors, LLC*, 2017 WL 2289219, at *2 (N.D. Cal. May 25, 2017) (quoting *Sibbach*, 312 U.S. at 14).

an order retroactive to an earlier date, is "limited to corrections of clerical errors or ministerial defects to the end that the original intention of the Court will be implemented."[41]  As the United States Supreme Court previously explained, an order may be entered retroactively "where the delay in rendering a judgment or a decree arises from the act of the court," whether for the Court's convenience, the press of business, the intricacy of the questions involved, or any other cause not attributable to the parties' laches.[42]

Entry of an order *nunc pro tunc* may be granted as justice requires in a particular case.[43]  Mergenthaler, relying on the Court's long-standing practice of issuing writs within ten years of a judgment's entry and of informing attorneys they need not file motions to renew before such time, did not file a motion to renew before obtaining the Challenged Writ.[44]  That is, Mergenthaler's failure to renew the judgment resulted from the Court's practice, rather than from any carelessness or negligence on his part.[45]  Entering the order *nunc pro tunc* would correct the Court's ministerial act – issuing the writ – that was based on its interpretation of its rules.  To refuse to renew the judgment retroactively unfairly

---

[41] *Handler Const., Inc. v. CoreStates Bank, N.A.*, 633 A.2d 356, 359 n. 2 (Del. 1993) (quoting *Angelli v. Sherway*, 560 A.2d 1028, 1034 n.2 (Del. 1989)).

[42] *Mitchell v. Overman*, 103 U.S. 62, 64-65 (1880).

[43] *Id.* at 65.

[44] The Court has confirmed this was the Prothonotary's practice before the *Schatzman* Letter was issued.

[45] *Compare* 49 C.J.S. Judgments § 156 ("[R]elief by entry *nunc pro tunc* will not be granted where the failure to enter judgment at the proper time was due to the party's own carelessness or negligence.")

would prejudice Mergenthaler for relying on the Court's established practice. Although Triumph argues that retroactive renewal of the judgment unfairly would prejudice Triumph's "legal right to the Merrill Lynch account proceeds," Triumph has not argued that it would have had a legal basis to resist a timely-filed motion to renew the judgment. [46] In other words, had Mergenthaler moved to renew before issuing the Challenged Writ, Triumph would not have had a basis to oppose renewal, and Mergenthaler would have successfully attached the account proceeds. Accordingly, correcting the Court's error places the parties back in the position they would have been in but-for that error.

Triumph, however, argues the Court should deny the Motion to Renew because Mergenthaler did not seek to renew the judgment retroactively in his response to the Second Motion to Quash and therefore waived that argument. The record in this case is replete with the parties offering new and shifting arguments regarding the Challenged Writ, which is indicative of the nuanced and arcane area of the law in issue rather than any gamesmanship by the parties. In any event, Triumph did not have occasion to argue that the judgment should be renewed *nunc pro tunc* based on the inconsistency between the Prothonotary's practice and the *Schatzman* decision because such inconsistency was not present at the time

---

[46] D.I. 172 at 4-5.

Triumph responded to the Second Motion to Quash.[47]  Accordingly, the Motion to Renew the judgment *nunc pro tunc* is granted, and judgment is renewed effective January 14, 2015.

### C. Because the Motion to Renew has been granted *nunc pro tunc*, Triumph's Second Motion to Quash and Motion for Withdrawal are denied.

Having concluded that the judgment should be renewed retroactively to a date before the Challenged Writ was issued, it follows that Triumph's Motion to Quash the Challenged Writ as untimely and Triumph's related Motion for Withdrawal of Funds must be denied.  Triumph argues, however, that even if the Motion to Renew *nunc pro tunc* is granted, the Second Motion to Quash and the Motion for Withdrawal also should be granted because refreshing the judgment retroactively "does not change the fact that the [Challenged Writ] was void *ab initio* and cannot be revived."[48]  Triumph argues the Challenged Writ is "incapable of revival" because "nothing ever existed that could be revived."[49]  That argument, however, is circular.  The authority Triumph cites for the proposition that the execution process issued on a dormant judgment is void does not address the effect of retroactive renewal or revival of that dormant judgment.  Because entry of judgment *nunc pro tunc* is premised on equitable principles and corrects ministerial

---

[47] The Superior Court's decision in *Schatzman* was not issued until several months after Triumph filed the Motion to Quash and Mergenthaler responded to it.  It appears the parties were not even aware of the *Schatzman* Letter until the Court brought it to their attention.  *See* D.I. 138.

[48] Opp'n to Motion to Renew Execution on J. ¶ 10.

[49] Triumph Suppl. Response dated Sept. 7, 2018 at 5.

defects to the end that the Court's original intention will be implemented,[50] it stands to reason that retroactive renewal of the judgment also corrects any defect in the execution process. That conclusion is supported by the United States Supreme Court's decision in *Mitchell*, in which the Court concluded that a judgment that was "absolutely void" at the time it was entered could be corrected by entry of an order *nunc pro tunc*. Triumph's contention that the defect in the Challenged Writ cannot be resolved with retroactive renewal of the judgment therefore is rejected as inconsistent with the intent of the *nunc pro tunc* doctrine.

## CONCLUSION

For the foregoing reasons, Triumph's Second Motion to Quash the Writ of Attachment *Fi. Fa.* is **DENIED**, Mergenthaler's Motion to Renew Execution on Judgment is **GRANTED**, and Triumph's Motion for Withdrawal of Funds on Deposit is **DENIED**. Mergenthaler shall file a conforming proposed order within five days. **IT IS SO ORDERED.**

---

[50] *See Mitchell*, 103 U.S. at 65.